## Lee Ware v. The State.

### No. 1972. Decided January 24, 1900.

**1.  Homicide—Charge—Failure or Neglect of Defendant to Call Aid to Preserve Life.**

On a trial for murder, where the court, after having submitted in the charge the issues of improper treatment, etc., by physicians, accidental shooting, and self-defense, and then further instructed the jury in the language of article 653, Penal Code, that "if the person inflicting the injury which makes it necessary to call aid in preserving the life of the person injured shall willfully fail or neglect to call such aid, he shall be deemed equally guilty as if the injury were one which would inevitably lead to death;" Held, the charge was erroneous and prejudicial, a physician having been called to see deceased a few moments after he was shot, and the only issue as to medical aid was whether the physician's treatment of the case was improper and caused the ʼdeath of deceased or whether the death was caused by the wound inflicted by defendant.

**2.  Same—Construction of Statute.**

Under provisions of the Statute (Penal Code, article 653) as above quoted, the mere omission to call aid without the element of legal malice or evil intent would not satisfy the demands of the statute. And a willful failure or neglect to call aid would not of itself make defendant guilty of the homicide if death was produced not on account of such failure but caused by act of third parties; nor would it make defendant guilty of the homicide if the killing was accidental or was done in self-defense. Henderson, Judge, dissenting as to the construction of the statute, and because the case should not be reversed on account of said charge, it not being made to appear that the charge was prejudicial to defendant.

Appeal from the District Court of McLennan. Tried below before Hon. Sam R. Scott.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

Appellant was charged in the indictment with the murder of Dan Lawrence, on the 18th day of December, 1897, by shooting him with a pistol. The material facts in evidence are stated in the opinion, and no further statement is necessary. Upon the question discussed in the opinion on this appeal the charge of the court was as follows, to wit:

"Homicide is the destruction of the life of one human being by the act, agency, procurement, or culpable omission of another. The destruction of life must be complete by such act or agency, but although the injury which caused death might not, under other circumstances, have proved fatal, yet if such injury be the cause of death, without its appearing that there has been any gross neglect, or improper treatment, by some person other than the defendant, such as the physician, nurse, or other attendant, it would be homicide.

"Now, if you are satisfied from the evidence, beyond a reasonable doubt, that the defendant Lee Ware did shoot Dan Lawrence, the deceased, and inflicted upon him a wound which was not of itself necessarily mortal, but which ultimately resulted in death, and which was brought about by no gross neglect or manifestly improper treatment upon the part of others, such as physician, nurse, or the deceased him-

self, then the party inflicting the injury would be as guilty as if the wound would of itself have inevitably produced death."

T. A. Blair and Jno. L. Dyer, Sr., for appellant, cited: Penal Code, arts. 651-653; Morgan v. State, 16 Texas Crim. App., 593; Taylor v. State, 51 S. W. Rep., 1106.

Rob't A. John, Assistant Attorney-General, for the State, cited: Jackson v. State, 51 S. W. Rep., 389; Franklin v. State, Id., 951; Morgan v. State, 16 Texas Crim. App., 593; Powell v. State, 13 Texas Crim. App., 621; 1 Greenl. on Ev., sec. 139.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at confinement in the penitentiary for two years.

He assigns error on that portion of the court's charge which instructs the jury that, "if the person inflicting the injury which makes it necessary to call aid in preserving the life of the person injured shall willfully fail or neglect to call such aid, he shall be deemed equally guilty as if the injury were one which would inevitably lead to death." This is an excerpt from article 653, Penal Code. Several objections are urged to said charge. The issues submitted by the court include murder in the first and second degrees, manslaughter, and assault with intent to murder. The evidence pertaining to these issues is in substance as follows: The deceased came into the saloon where appellant was bartender, and went into the rear portion of the building, where there was a restaurant. The porter of the saloon was in there eating his supper. Deceased either requested or demanded of the porter a division of his beefsteak. The porter ran into the saloon where appellant was behind the bar, followed by deceased, who chased him around behind the bar. Deceased was ordered out from behind the bar by appellant. Some angry words ensued, and one theory of the testimony is that deceased refused to go, and was compelled by appellant to do so. Deceased went into an adjoining room and asked for a knife. About the time he entered the room and requested the knife, appellant said he did not permit any black son of a bitch to come behind his bar. Deceased failing to get the knife, returned in front of the bar, and asked appellant what was the matter "with his being a white son of a bitch." Here appellant seized a small bottle, and either struck deceased or threw it at him, there being a conflict in the testimony on this point. Deceased also seized a stone mug, and threw it at appellant. There is some conflict at this point as to whether appellant or deceased threw first. Deceased immediately seized a stone mug in each hand, and, while he was in the act of throwing, appellant suddenly seized a pistol from under the counter and fired. The ball entered deceased's face about the mouth, and lodged in the neck bone. Appellant testified that the shooting

was accidental; that he had no intention of inflicting any wound upon deceased, and only fired to frighten him from the saloon. Deceased lived ten days or longer. Immediately after the shooting the friends and relatives of deceased carried him home, and appellant was at once carried to jail. Dr. Hengst, the attending physician, was with deceased in a few moments after he was shot. The shooting occurred on Saturday night. Deceased was seen walking about the streets of Waco about a week after the difficulty, according to the testimony of two witnesses. He was apparently getting along very well, and so stated. Dr. Hengst testified that the ball passed within the thickness of a sheet of writing paper of the spinal cord, but did not produce paralysis. That some days subsequent to the shooting he carried deceased to the office of Dr. McLain, and there had the ball located by the X-ray process, and then probed the wound, with the view of extracting it. After death the ball showed to have been mashed by the probing instrument. There was a failure to dislodge the ball, and it remained imbedded in the neck bone. In about three or four days, or less time, after the wound was probed, deceased died from paralysis.

The court submitted the issue as to improper treatment, gross neglect, etc., by the physicians, and it was in this connection that the charge excepted to was given. We are of opinion there was no evidence calling for a charge in regard to a willful failure to call assistance. Taylor v. State, ante, p. 148. Under this testimony, and in the manner in which the charge was given, it was hurtful, and may have led to the conviction of appellant in the face of the evidence. The court also instructed the jury in regard to accidental shooting, and charged the law of self-defense, authorizing the jury to acquit if they believed either theory. He also submitted the issue of assault with intent to murder, and failed to charge the law of aggravated assault. Under the statute given in charge by the court, if deceased came to his death by the manifest improper treatment or neglect of some other person than the accused, he would be entitled to an acquittal of any degree of culpable homicide. We understand the law to be, under ordinary circumstances, if a person is struck by one party, but death is caused by an independent act of another, without concert with the first person, the second, and not the first, person will be held responsible for the death. McClain, Crim. Law, p. 261, sec. 292, and for collation of authorities, see notes 2, 3, and 4; State v. Wood, 53 Vt., 560; Jordan v. State, 79 Ala., 9; State v. Scates, 50 N. C., 420. So, our statute, recognizing this principle, will relieve the party inflicting the injury, if the injured party dies on account of the improper treatment, etc., of some other person. And this rule seems to apply in cases of this character, under this statute, unless the injury inflicted by the first party is necessarily fatal. So it seems to be clear, under this statute, if the destruction of life was not completed by the act, agency, procurement, or omission of appellant, but was brought about by the

gross neglect or improper treatment of some other person, that defendant would not be responsible for the death; hence could not be punished for any grade of homicide. The charge in question instructs the jury that, if defendant willfully failed to call aid, he would be deemed as guilty as if the injury was one which would inevitably lead to death. If this proposition is applicable to this case, then it would make no difference, if the doctor or some third person brought about the homicide, for defendant would still be guilty, although the physician or some other party may have actually killed deceased. If this is the effect to be given this section of the statute, then such failure must be willful,—that is, with legal malice and evil intent,—and such willful failure to call aid must be to bring about the death of the injured party by reason of such failure. The mere omission to call aid, without the element of legal malice or evil intent, would not satisfy the demands of the statute. In no event could appellant be held responsible under this law, unless there was a willful failure and neglect to call aid to the man whom he had injured. Now, suppose the jury should have believed appellant willfully failed and neglected to call aid, but that death was produced, not from this source, but by reason of the act of the third party; would it be contended that appellant could be incarcerated in the penitentiary for the homicide? We do not believe the statute bears such a construction, or was intended to do so. But, even if it did, then the evidence must be clear that his failure or neglect was willful. Now, suppose that, by reason of his willful failure to call aid, he should be deemed guilty of homicide; of what grade should he be convicted? Would he stand in relation to the homicide as if death had resulted accidentally, although a third party may have intervened and killed him? Suppose the party inflicting the injury should do so in a clear case of self-defense, and failed to call aid, and the injured party died; then of what offense would he be guilty? Would he be responsible for criminal homicide if, under those circumstances, he failed to call aid? Suppose the jury found, as matter of fact, that defendant did not produce the death, but the probing of the wound did, but did find that appellant willfully failed to call assistance; would the conviction be authorized alone because of such willful failure to call aid? In other words, could the failure to call aid be substituted for guilt, under facts necessary to constitute the offense? Suppose, as testified by himself, the shooting was accidental, and he did not call aid; would he be equally guilty as if he had purposely shot? Having failed to call aid, would that make him guilty if he otherwise was justified in firing, under the law of self-defense? We do not understand such to be the law under this statute. If appellant was justified in shooting, the law exonerated him from that criminality, and it would make no difference whether he called aid or not. His failure in this respect would not abrogate his right of self-defense, nor impair his right to have that issue fairly considered by the jury. So, we are of opinion that this was a direct infringement upon the issue submitted to the jury as to the fact that

the death may have been produced by the neglect and improper treatment of others than the defendant subsequent to the shooting. If the accused died from the overt act of parties subsequent to the killing, without the concurrence or aid or concert of appellant, then the mere omission, willful or otherwise, of appellant to call aid, would not make him responsible for the death. He is charged by our laws for what he himself does and its legitimate results. If appellant had illegally shot deceased, or inflicted upon him an injury that might not have been fatal, and yet, of his malice and evil purpose and intent, had failed to call aid, to the end that the party should die, then the killing might be imputed to him; but, in any event, that failure to call aid must be willful,—that is, with legal malice and evil intent. In this instance, the party had attention of friends, relatives, and physicians at once, and appellant was placed in jail, where it was beyond his power to render aid. So, from any standpoint, this charge was not only not called for by the facts and the issues of the case, but it was trying the case upon false issues, and justified the conviction of appellant in derogation of the very statute itself, and was a limitation not authorized by the statute upon that phase of the case with reference to the death on account of improper treatment, as well as that of self-defense and accidental shooting.

It is also contended that the evidence does not support the conviction. We pretermit a discussion of this question, but would suggest that the evidence could be made much clearer and plainer with reference to the treatment of the wounded man, especially in regard to the matter of probing for the ball. The testimony of Dr. Hengst shows a rather remarkable statement of facts in regard to the course of the ball and his subsequent action in probing for it. If it is a fact that the course of the ball was within the thickness of a sheet of writing paper of the spinal cord, the probing of the wound for the ball, would, of necessity, be a very dangerous operation, and it seems to have resulted fatally; for, if the testimony of the doctor himself, as well as the witnesses who saw deceased walking about the streets of Waco, is to be credited, he seems to have been getting along very well until after the probing operation, and that then his end came rapidly. It is testified by the physicians that, if the ball had touched the spinal cord, instant paralysis would have ensued below the point of contact. It did not ensue until after the wound was probed. We, however, do not pass upon that question. The evidence may be made clearer upon another trial. Because of the error of the court in regard to giving the charge above discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HENDERSON, JUDGE (Dissenting).—A majority of the court have agreed to reverse this case on account of an alleged misdirection of the judge in instructing the jury. I do not agree to such disposition of the case, and will assign my reasons for believing it should be affirmed.

The homicide occurred in a saloon in the city of Waco, in a casual difficulty between defendant and deceased. According to the theory of the State, the conviction could be maintained for murder in the second degree or manslaughter. According to the theory of defendant, he ought to have been acquitted on the ground of self-defense, or on the ground of accident, as testified by him, or because the death of deceased was not caused by the shot inflicted by defendant, but came about on account of the gross neglect of deceased and his physicians. I do not think there is any doubt that the conviction can be sustained for manslaughter, which was the finding of the jury, unless it be true, as assigned by appellant—"First. That the evidence shows deceased came to his death from exposure on his own behalf; and for the further reason that death resulted from the wound, co-operating with medical treatment, the latter being the immediate and producing cause of the death of deceased, owing to the fact that the physicians in locating the ball lodged in the vertebræ, in probing and trying to extract same, it was caused to press upon the spinal cord, and thereby produced inflammation and paralysis, which caused the death of deceased. Second. The court erred in giving to the jury the following clause of the charge: 'And, if the person inflicting the injury which makes it necessary to call aid in preserving the life of the person injured shall willfully fail or neglect to call such aid, he shall be deemed equally guilty as if the danger were one which would inevitably lead to death.'"

Now, with reference to the first proposition above stated, I would say: There is absolutely no testimony showing appellant exposed himself in such manner as contributed to his death. No witness says his coming down into the city of Waco, after the infliction of the wound, tended in the least to aggravate the wound, or to bring on any disease, in connection with the wound, which caused his death. In regard to the allegation that, in probing the wound, the spinal cord was pressed on in such manner as to cause his death, the evidence of the attending physician shows the ball was located by the X-ray process, and was found imbedded or lodged in a piece of the vertebræ close to the spinal cord. The space (i. e., the bone intervening between the ball and the spinal cord) was shown to be about the width of a sheet of paper. Death was caused, as stated by this witness, by paralysis produced by pressure on the spinal cord, or by inflammation of the spinal cord, one or the other. This ensued four or five days after the wound was probed and the attempt made to dislodge the ball. Up to the time of the probing process, deceased was not afflicted with paralysis. The witness stated death resulted from the wound inflicted from the pistol shot. Shelton, for defendant, testified that from the testimony of Dr. Hengst, the attending physician, on account of the lodgment of the ball being so close to the spinal cord, he did not deem it proper practice to have attempted to remove same. If deceased had been his patient, and he was getting along all right, he would not have pursued this treatment. He

further states, on account of the proximity of the ball to the spinal
cord, it might have produced inflammation that might of itself have
resulted in paralysis and death without the probing operation; that
he could not testify there was any negligence or improper treatment
of deceased.   Drs. Curtis and Cammack, for defendant, agree with
Dr. Shelton.  Dr. Hall, who was also introduced for the State, states
he would not regard it as improper professional treatment to attempt
to extract the ball; that, under the circumstances, he would himself
have tried to extract it.   This is substantially all the expert testi-
mony bearing on the cause of death.

Our statute, and the decisions under it, attribute the death to the
wound, unless it is made to appear there has been gross neglect or
manifestly improper treatment of the person injured.   Art. 652,
Penal Code.  Now, recurring to the testimony, there is absolutely
none showing any gross neglect or improper treatment.   Three of the
physicians merely say that, under the circumstances as detailed by the
attending physician, they would not have pursued the treatment, or
attempted to extract the ball, owing to its near proximity to the
spinal cord.   None of them assert it was negligence or improper treat-
ment to have done so.   It will be noted, in this connection, that these
witnesses speak after the proximity of the ball to the spinal cord was
demonstrated, and after its final removal, after death.   Evidently
Dr. Hengst had no way of determining the close proximity of the
ball to the spinal cord when he attempted to remove it.   In my view,
the testimony of defendant's witnesses falls short of showing, or
tending to show, any gross neglect or improper treatment.   More
than this, evidently it was a critical question for the attending physi-
cian to determine what was the best course to be pursued when he
found the ball lodged in the vertebræ of the neck.   To let it remain
was dangerous; to attempt to remove it might be dangerous to the
patient.   And I think it can scarcely be said that the decision to
attempt to remove it, under the circumstances, could be considered
gross negligence or manifestly improper treatment, and I feel war-
ranted in saying this because none of the physicians undertake to
say it.

The court gave a correct charge on the phase of the case which
involved the question whether or not the wound caused the death,
or the wound, not being necessarily mortal, death was brought about by
the gross neglect or manifestly improper treatment on the part of
others, etc.   I do not understand this portion of the charge to be
criticised by appellant.   I do understand, however, a majority of the
court believe another portion of the charge, which is merely inserted
in the general charge without being applied to the facts, is misleading,
and was calculated to injure the rights of appellant.   This charge
is copied from our statute, and is as follows:  "If the person inflicting
the injury which makes it necessary to call aid in preserving the life
of a person injured shall willfully fail or neglect to call such aid,
he shall be deemed equally guilty as if the injury were one which

would inevitably lead to death." It is contended there is nothing in the statement of facts authorizing this charge, and that this was calculated to confuse and mislead the jury. I concede there is nothing in the case requiring said charge, but I do not agree to the proposition that it being inserted in the charge as an abstract proposition was calculated to injure appellant. Much less do I agree to the construction placed on said statute in the majority opinion. Articles 652, 653, Penal Code, merely treat of the cause of death; and the expression in the latter portion of the last named article, to wit, "The person inflicting the injury, who willfully fails and neglects to call aid, shall be deemed equally guilty as if the injury were one which would inevitably lead to death," does not mean guilty of any particular grade of felonious homicide, but merely that the death under such circumstances shall be attributed to the person who caused the injury. And the giving of such a charge is not tantamount to telling the jury that appellant is guilty of any grade of felonious homicide, if he inflicts an injury from which death results, and willfully failed to call aid, but it does, in effect, tell the jury that if one inflicts an injury, and then willfully fails to call aid, such injury proving fatal, the death of the injured party shall be attributed to his act. Such being the construction of said article, was the giving of same in this case, as it was, calculated to injure appellant? The only real issue as to the injury causing the death was involved in the attempt to probe for the ball, or to extract same from its lodgment, in the neck of deceased, by the physicians. This proposition, as stated before, was submitted to the jury in a proper charge, and they found against appellant; that is, that there was no gross negligence on the part of the attending physician, and death was caused by the wound inflicted. Now, the jury could not have possibly believed there was any willful failure on the part of appellant to call in the physician after he shot deceased; for, as stated, there was no evidence on this point, and it was not an issue in the case. Since the recent statute, the rule is well established that a case will not be reversed for a misdirection in the charge of the court, unless it is shown that such charge operated to the prejudice of appellant. I do not believe any such prejudice resulted in this case, and the judgment of the lower court ought to be affirmed.