Searches and seizures ⬳3(1)—Officers, seeing defendant on horse with jug attached to saddle, held to have probable cause for search without warrant.

Officers, who were watching for defendant and, on his appearance on horseback with jug tied to saddle, approached defendant, who had stopped and hitched his horse, whereupon defendant ran away, *held* to have had probable cause, justifying search without warrant.

Appeal from District Court, Walker County; Carl T. Harper, Judge.

H. L. Mims was convicted of unlawful possession of intoxicating liquor for the purpose of sale, and he appeals. Affirmed.

M. E. Gates, of Huntsville, for appellant.

A. A. Dawson, State's Atty., of Austin, for the State.

MORROW, P. J. The unlawful possession of intoxicating liquor for the purpose of sale is the offense; punishment fixed at confinement in the penitentiary for a period of two years.

According to the state's evidence, the officers were hiding in a cluster of bushes waiting for the appellant to arrive with some whisky. He soon appeared on horseback with a jug tied to the horn of the saddle. There were several fires built with negroes around them. Appellant stopped and hitched his horse. After waiting a while, the officers got up and started in the direction of the appellant and he ran away. They took possession of the horse and the jug. The jug contained whisky. The officers testified that they had a search warrant which was not produced. Its loss or diligence to produce it is not satisfactorily shown.

Two bills of exceptions are presented, complaining of the receipt of the officers' testimony without the production of a search warrant. If the circumstances were not such as to justify the arrest of the appellant or the search of his horse without a warrant, the receipt of the testimony showing the result of the search would be questionable. See Chorn v. State (Tex. Cr. App.) 298 S. W. 290; Henderson v. State (No. 11178) 1 S. W. (2d) 300, not yet [officially] reported. The bills are qualified, however, with a recital of the facts in substance as above taken from the statement of facts, and with the further statement that the court regarded the knowledge which the officers possessed sufficient to meet the demand of the law for "probable cause" and to justify the search of the horse without a warrant. In this conclusion we think the learned trial judge was justified by the facts before him. See Battle v. State, 105 Tex. Cr. R. 568, 290 S. W. 762.

The judgment is affirmed.

## WALDRUP v. STATE.  (No. 11061.)

Court of Criminal Appeals of Texas. Dec. 21, 1927.

1. Criminal law ⬳814(5)—In prosecution for murder by inflicting cuts while quarreling, evidence held not to warrant charge of willful neglect to call life-preserving aid for injured (Pen. Code 1925, art. 1203).

Where defendant, charged with murder and convicted of manslaughter for having cut and injured another in a quarrel so that the injured one had died before receiving medical attention, claimed he acted in self-defense, evidence *held* not sufficient to warrant a charge in conformance with Pen. Code 1925, art. 1203, making it mandatory, at injured's peril, for one inflicting

injury upon another to call aid to preserve life where life is endangered as a result of the injury.

**2. Homicide** ⊛⟿**300(7)—Requiring resort to all other means before killing in self-defense held error under defensive theory of serious danger.**

Where, in trial under indictment charging murder and resulting in conviction of manslaughter, the court charged to the effect that before killing one's adversary one must resort to all other means for the prevention of injury to oneself, charge *held* erroneous where the defense was that defendant was in danger of serious bodily injury by being attacked by the deceased.

Commissioners' Decision.

Appeal from District Court, Childress County; R. L. Templeton, Judge.

Hub Waldrup was convicted of manslaughter, and he appeals. Reversed and remanded.

Fires & Williams, of Childress, for appellant.

A. A. Dawson, State's Atty., of Austin, for the State.

CHRISTIAN, J. Appellant was convicted of manslaughter under an indictment charging him with murder, and his punishment assessed at confinement in the Penitentiary for 3 years.

Appellant assigns as error that portion of the court's charge which instructed the jury that, "if the person inflicting the injury, which makes it necessary to call aid in preserving the life of the person injured," knows that the injury has been inflicted and "shall willfully fail or neglect to call such aid, he shall be deemed equally guilty as if the injury were one which would inevitably lead to death." This is an excerpt from article 1203, Pen. Code. The issues submitted by the court included murder, manslaughter, aggravated assault, and self-defense. The testimony shows that deceased and appellant were at a dance near Childress when they engaged in two distinct difficulties. It was the theory of the state, as shown by the testimony, that the first difficulty was a fist fight, and that, during a difficulty which ensued shortly thereafter, appellant ran deceased 80 or 90 steps and, as deceased fell, cut him on the leg with a knife. It was appellant's theory, as shown by his testimony, that, after he and deceased had engaged in an altercation of words he (appellant) was standing by an automobile adjusting his hose supporter, when deceased struck him, threw him to the ground, and cut him across the back with a knife; that, when deceased cut him with a knife, he secured his knife and cut deceased on the leg; that on the occasion of the second difficulty, he ran after deceased and engaged in a fight with him, but did not cut

him. After deceased was wounded, his leg was bandaged by some of his companions, who then placed him in a car and carried him 14 or 15 miles to a doctor. There is some testimony in the record to show that, shortly before deceased was started to a doctor, appellant stood by the car with a bottle in his hand, and that, when one of the witnesses stated, "Let's get him [meaning the deceased] to a doctor as quick as we can," appellant said, "Did I want him to knock my damned brains out?" It appears from the testimony of another witness that one of the witnesses said to appellant, "Fellow, you have cut his leg nearly off, and he is bleeding to death." No effort was made by any one to phone for a doctor. Due to tire trouble, it took three and a half hours to carry deceased to the home of a doctor. Deceased died from the loss of blood before reaching the doctor's house. The testimony of the doctor shows that, if the wound had been properly bandaged and medical attention given deceased within a reasonable time. death should not have resulted. The court submitted the issue of improper treatment and neglect.

[1] We do not think the evidence warranted a charge in regard to willful failure to call assistance. That the giving of such charge was prejudicial to appellant seems obvious. He contended that he acted in his necessary self-defense in inflicting the injury that resulted in the death of deceased. The facts of the instant case are fairly within the holding of the case of Ware v. State, 41 Tex. Cr. R. 415, 55 S. W. 342. We quote from that case as follows:

"The mere omission to call aid, without the element of legal malice or evil intent, would not satisfy the demands of the statute. In no event could appellant be held responsible under this law, unless there was a willful failure and neglect to ·call aid to the man whom he had injured. Now, suppose the jury should have believed appellant willfully failed and neglected to call aid, but that death was produced, not from this source, but by reason of the act of the third party; would it be contended that appellant could be incarcerated in the Penitentiary for the homicide? We do not believe the statute bears such a construction, or was intended to do so. But, even if it did then the evidence must be clear that his failure or neglect was willful. * * * Suppose the party inflicting the injury should do so in a clear case of self-defense, and failed to call aid, and the injured party died, then of what offense would he be guilty? Would he be responsible for criminal homicide if, under those circumstances, he failed to call aid? Suppose the jury found, as matter of fact, that defendant did not produce the death, but the probing of the wound did, but did find that appellant willfully failed to call assistance; would the conviction be authorized alone because of such willful failure to call aid? In other words, could the failure to call aid be substituted for guilt, under facts necessary to constitute the offense? * * * If

appellant was justified in shooting, the law exonerated him from that criminality, and it would make no difference whether he called aid or not. His failure in this respect would not abrogate his right of self-defense, nor impair his right to have that issue fairly considered by the jury."

It was the theory of appellant that deceased had threatened him and made hostile demonstrations at the time of the homicide. This theory was supported by the testimony of appellant and that of some of his witnesses. The court charged the jury that:

"Homicide and infliction of serious bodily injury are justifiable in the protection of the person against any unlawful and violent attack, but in such case all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack."

[2] Appellant excepted to that portion of the charge that required him to resort to all other means for the prevention of the injury. In the case of Maclin v. State, 65 Tex. Cr. R. 384, 144 S. W. 951, the rule is thus stated:

"A charge is error which requires defendant to resort to other means before he could kill when the defensive theory is that his life had been threatened and deceased had made hostile demonstrations at the time of the homicide."

See Crenshaw v. State, 48 Tex. Cr. R. 77, 85 S. W. 1147.

The rule quoted is applicable to the facts of the instant case, and it was error to require appellant to exercise other means before exercising his right of self-defense.

We will not undertake a discussion of the other matters complained of by appellant, as they are not likely to occur on another trial of the case.

For the errors pointed out, the judgment is reversed and the cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the court.