STATE v. JOSEPH B. WOOD AND ALMA R. SMITH.

*Murder, of First and Second Degree. Dying Declarations. Gen. Sts. c.* 120, *s.* 12, (*R. L. ss.* 1704, 1705).

1. If *dying declarations* relate to *other* and *former* matters; if they do not relate to the *direct transactions* and *circumstances* from which the death of the person murdered ensues, they are inadmissible; thus, the following question to the wounded man, and his answer, are not admissible. "Had either of them threatened to injure you before" ? "Yes; my wife (one of the respondents,) has threatened a thousand times to kill me before. She threatened to kill me before she went away the last time. She went away in July; I think, though, it was August 10th. She came back day before yesterday."

2. If one inflicts a mortal wound, but before death ensues, another kills the same person by *an independent act*, without *concert* with, or *procurement* of, *the first man*, he, who caused the first wound, cannot be convicted of *murder*, or *manslaughter*, or an *assault with intent to kill*, on an indictment charging both jointly with murder.

3. The charge of the court as to *self-defence* is held correct.

4. Also, as to the distinction between murder of the *first* and *second* degree.

5. Gen. Sts. c. 120, s. 12 (R. L. ss. 1704, 1705,) providing that one tried for murder, may be found guilty of manslaughter,—construed.

. THIS case was tried at the September Term, 1880, PIERPOINT, Ch. J., presiding. It was an indictment charging the respondents jointly with the murder of one Luman A. Smith, at Williston, in said county, on the 23d day of October, 1879. Plea, not guilty, and trial by jury. The question as to the admissibility of the dying declarations of the said Luman A. Smith is sufficiently stated in the opinion of the court. The sixth request made by the respondents' counsel is as follows :

That if the jury find that respondent Wood assaulted Smith even with intent to kill him, with or without malice, and inflicted upon him the wound in the abdomen of which he did not die, still if they find there was no previous understanding or concert between him and respondent Alma to assault and kill Smith, and that they acted independently and without any previous understanding or concert, and the acts of each were without the procurement or request of the other, each are only responsible for

their own acts, and Wood cannot be convicted of murder, manslaughter, or assault with intent to kill, upon this indictment.

The charge of the court as to this request is stated substantially in the opinion. As to self-defence, embraced in the respondent's 14th request, the court charged :

Now, a man has a right to defend himself when he is assaulted, and, under certain circumstances, the manner of assault warranting it, he is justified in taking life in defence of himself; not only in defence of his life but in defence of his limb, and to avoid great bodily harm. He has a right to defend himself. To entitle a man to the right of exercising this self-defence it is not necessary that he should be actually assaulted, struck or seized. It is enough that he should be placed in such a position that he has a right to anticipate, to believe, that is, a legal right to believe, good cause to believe, that his life is endangered by the assault, or that his limbs are in danger, or that he is in danger of great bodily injury. When he is in that position he has the right to take the initiative to defend himself. If a man assault you with a revolver under circumstances that give you a right to believe that he intends to shoot you, you are not obliged to wait till he fires. It might be too late then. You have a right to anticipate, and you have a right to defend yourself against that which thus assails you and places you in danger. But in order to give you that right, the assault must be made under such circumstances as to give you a good reason to believe, a legal right to believe, which means good reason to believe that the man intends to shoot you, that he intends to do you a harm which would result from a discharge of his pistol into you : and thus believing you have a right to anticipate, and if you have the means you have the right to shoot him in anticipation. You have a right to strike him in any way that you can that will prevent his carrying out the purpose that he manifests towards you, to disarm him ; and if it is necessary you have the right to take his life when your own is thus assaulted.

### DEGREES OF MURDER :

The real line of distinction, the real line of demarkation between murder in the first and second degree, might be refined until it became somewhat shadowy. The line is not clearly defined by the law. But to constitute murder in the first degree, it is apparent that a greater degree of deliberation is required than would constitute murder in the second degree.

To illustrate : If, for instance, you should find in this case that

these respondents had deliberately planned the taking of the man's life not at any particular time, or at any particular place, but if they had formed the purpose between themselves of taking this man's life, had deliberated upon it, had prepared their weapons for that purpose, put themselves in readiness to that end, and when the opportunity presented itself, deliberately set about carrying that purpose into effect, then you would have a case that would constitute murder in the first degree. There would be that degree of deliberation about it which the statute contemplates in saying that murder under such circumstances, should be murder in the first degree.

To illustrate further: If there was no intention previously formed between these parties to take this man's life, no consultation about it, no thought about it, no deliberation about it, but when they saw that he was coming to take the horse in the way that the evidence tends to show that he was, contrary to their wishes, contrary to their expectation, they sally out and assail him in that respect, and in the course of that assault draw their revolvers and take his life, although there might be such deliberation as would constitute murder at common law punishable by death, it might not be such as to constitute murder in the first degree by our statute, but would constitute murder in the second degree.

I have made these illustrations that you may see the distinction that the law makes between murder in the first and second degree.

The rest of the charge on this point is substantially stated in the opinion of the court.

*M. A. Bingham*, (*H. S. Peck*, with him,) for the State.

The dying declarations of Smith were admissible. Best on Ev. note on p. 914, vol. 2; *State* v. *Terrill*, 12 Rich. Law. (S. C.) 321; *People* v. *Sanchez*, 24 Cal. 17; *State* v. *Johnson*, 17 Ala. 618; *State* v. *Thornley*, 4 Harr. Del. 562; *Hudson* v. *State*, 3 Cold. Tenn. 315; *People* v. *Olmstead*, 30 Mich. 431; U. S. Digest, vol. 6, (N. S.) 289; Phillips on Ev. vol. 1, p. 241; Wharton Crim. Law, 4th ed. vol. 1, p. 682; Arch. Crim. Pract. and Plead. vol. 1, p. 455; *State* v. *Keene*, 50 Mo. 357; U. S, Digest, vol. 4, (N. S.)

*R. H. Start*, for the respondents.

Smith's declarations are not admissible. *Rex* v. *Mead*, 2 B. and C. 605; 1 Greenl. Ev. s. 156; *State* v. *Shelton*, 2 Jones

Law, N. C. 366 ; *Mose* v. *State*, 35 Ala. 427 ; *Nelson* v. *State*, 7 Humph. Tenn. 543 ; *Ben* v. *State*, 37 Ala. 105 ; *Hackett* v. *People*, 54 Barb. 370. See *State* v. *Scates*, 5 Jones Law, N. C. 425.

The opinion of the court was delivered by

VEAZEY, J. This is an indictment charging the respondents jointly with the murder of one Luman A. Smith. The respondent Alma R. Smith was the wife of Luman A. In support of the indictment the State offered in evidence the dying declarations made by said Luman, and reduced to writing in the form of question and answer. After detailing the account of the fatal affray, this question was asked : " Had either of them threatened to injure you before " ? Answer. " Yes, my wife has threatened a hundred times to kill me before. She threatened to kill me before she went away the last time. She went away in July ; I think, though, it was August 10th. She came back day before yesterday." This dying declaration was made October 23d, the same day of the affray. To the admission of this question and answer, the respondents objected. We think its admission was error.

The admission of dying declarations is an exception to the rule rejecting hearsay evidence. Their admissibility is subject to several well-defined conditions ; one is, that the circumstances of the death shall be the subject of the declaration. This was so held in the early and leading case of *Rex* v. *Mead*, 2 Barn. and Cres. 605 ; s. c. 9 Eng. Com. Law Rep. 196. This proposition has been incorporated into the elementary works on criminal law, and is adhered to in the reported cases where the question has arisen. There seems in some cases to have been more or less confusion of the grounds on which dying declarations are admissible. Some writers and courts have apparently overlooked the full force of the restriction announced by ABBOTT, Ch. J., in *Rex* v. *Mead*, *supra*, in contemplation of the other proposition of Lord Chief Baron EYRE, in *Rex* v. *Woodcock*, 2 Leach Crim. Cas. 256, 567, where he asserts that the general principle on which this species of evidence is admissible is, that dying declarations are made in extremity, when the party is at the point of death, and when every hope of this world is gone, and every motive to

State *v*. Wood.

falsehood is silenced, and the mind is induced by the most power-
ful considerations to speak the truth.

This proposition is sound, but is not the test as to what dying
declarations are admissible. The true ground of their admissi-
bility is that of necessity, in order to prevent murder going un-
punished. And although it is not indispensable that there should
be no other evidence of the same facts, the rule is regarded as
founded upon the presumption that in the majority of cases there
will be no other equally satisfactory proof of the same facts. "The
usual and ordinary rule of evidence must, *from the necessity of
the case*, be departed from," is the remark of SHAW, Ch. J., in
discussing this subject in *Com.* v. *Casey*, 11 Cush. 417, 421.
Such declarations are necessary to identify the prisoner and estab-
lish the circumstances of the *res gestæ*, or direct transactions from
which the death results. If therefore, they relate to the other,
former, distinct matters, they do not come within the reason of the
rule. They are without the sanctity of an oath, or the opportunity
for cross-examination, a proceeding often quite as essential to the
eliciting of all the truth as the obligation of an oath, or its equiv-
alent. The law regards the situation of the individual, being in
danger of impending death without hope or expectation of recov-
ery, however slight, as equivalent to the sanction of an oath ; and
has wisely said that the oath and cross-examination must be dis-
pensed with in this instance on account of the public necessity of
bringing murderers to justice in order to preserve the lives of the
community. But courts have refused to extend the rule beyond
the cause and circumstances of the death, or to former distinct
transactions which stand for proof like any ordinary facts.
" Speaking for myself," said Lord Chief Baron POLLOCK, " I
must say that the reception of this kind of evidence is clearly an
anomalous exception to the law of England, which I think ought
not to be extended." *Regina* v. *Hinds*, Bell, C. C. p. 256.
In our own court ALDIS, J., says : " The rule that dying declara-
tions should point distinctly to the cause of death, and to the cir-
cumstances producing and attending it, is one that should not be
relaxed." *State* v. *Center et al.*, 35 Vt. 386. To similar pur-
port are the remarks of Mr. Justice BYLES in *Regina* v. *Jenkins*,

Law Rep. 1 C. C. p. 193 ; and ALDERSON, B. in *Rex* v. *Ashton*, 2 Lewis C. C. J. 147.    See *Hackett* v. *The People*, 54 Barb. Sup. Ct. Rep. 370 ; *Ben* v. *The State*, 37 Ala.——; *Mose* v. *The State*, 35 Ala. 421 ; *State* v. *Shelton*, 5 Jones Law (N. C.) 360 ; *Nelson* v. *The State*, 7 Hump. 542 ; *State* v. *Varney*, 8 Boston Law Rep. 562 ; 1 Greenl. Ev. s. 156.

The threats stated by the declarant were not admissible as a part of the *res gestœ*.    The law upon this subject is clearly stated by ROYCE, J., in the late case of *State* v. *Carlton*, 48 Vt. 636, where it was held that a statement of the deceased as to where the respondent shot him, made about two minutes after the affray, and some eleven rods from the scene thereof, was inadmissible.    The learned judge says : " It is well settled in this State, that to make such matter admissible, it must have been concurrent with the act or transaction in issue, and a part of it ; and that the narrative of a transaction completed and finished when the narrative is given, though made while fresh in memory, and so soon after that the party had not time probably to imagine or concoct a false account, is inadmissible " ; and he cites numerous cases in support of that proposition.

II.    On the trial the respondents offered evidence to show that Luman A., the declarant, did not believe in a future state of existence and of rewards and punishment, for the purpose of discrediting his dying declarations and as affecting the weight to be given them by the jury.    The court ruled that such evidence was not admissible and excluded it, to which the respondents excepted.

As we are informed the question will not be raised in another trial for the reason that there was no foundation in fact for the offer of the evidence rejected, although counsel then understood otherwise, we announce no decision upon it now.

III.    We think the exception to the charge of the court to the jury in response to the sixth request must be sustained.    The evidence on the part of the State showed that Luman A. died from

the effects of the wound inflicted by Alma, and not from that inflicted by Wood; and their evidence tended to show that there was no concert between them, but that each acted independently.

The court instructed the jury in substance that although Luman A. died of the wound inflicted by Alma and not from that inflicted by Wood, and although there was no concert between them, and each acted independently, and they were therefore only responsible for their own acts respectively, still if the wound inflicted by Wood was mortal, and would in course of time have killed Luman A., if he had not previously died from the wound inflicted by Alma, and although he did not die of the wound by Wood, yet the latter could be convicted of murder.

The court was in error in the assumption that a man can be convicted of murder although his act does not cause the death. The question does not turn upon the moral aspect of the case. The intent to murder may be never so plain, yet if something intervenes to prevent the consummation of the intent, if death does not follow from the act of the accused, he is not in law a murderer. All of the definitions of murder found in the books involve the idea and fact of a killing. This must have reference, when a man is on trial, to a killing by him. If one inflicts a mortal wound, but before death ensues, another kills the same person by an independent act, without concert with, or procurement of, the first man, how can he be said to have done the killing? The second person could be convicted of murder, if he killed with malice aforethought, and to convict the first man would be assuming that he killed the same person at another time. See *State* v. *Scates*, 5 Jones Law, (N. C.) 425.

Upon the supposition contained in the request and charge, and upon the showing made by the State that Luman A. died from the shot given by Alma and not by that given by Wood, the latter could not be convicted of any crime under this indictment. The statute, s. 12, ch. 120, Gen. Sts., providing that a person put on trial for murder may be acquitted of that, and found guilty of manslaughter, would not apply to Wood's case, because upon the supposition stated, there was no death from his act. The evidence on the part of the State, as assumed in the supposition,

tends to 'show that Wood is guilty of an assault with intent to kill, being armed with a dangerous weapon. The statute does not provide that a person may be found guilty of this crime under an indictment for murder.

IV. We do not think there is substance enough in the exception to the charge, upon the 14th request, and to the refusal to charge according to that request, to warrant discussion of it. That the charge was as favorable a presentation of that branch of the case to the jury, in law and fact, as the respondent Wood was entitled to, seems to us beyond question.

V. Respondents' counsel also excepted to that part of the charge wherein the court instructed the jury in reference to what the law requires to constitute murder in the *first* and *second* degrees. It is claimed that the statute establishing different degrees of murder has not changed the definition or elements of murder as defined by the common law, and that the court below did not recognize this fact or proposition, but charged as though malice aforethought was not an essential ingredient of murder in the second degree. We do not think this exception can be sustained. The statute states in somewhat general terms what shall constitute murder of the *first* degree, and then says all other murder shall be deemed murder of the *second* degree. The line of distinction or demarkation between them is, as stated by the learned chief justice in his charge, not clearly defined by the law. In a case like this one the point would turn on the amount of deliberation shown. The court called attention generally and by illustration to the distinction recognized in the statute and said, " to constitute the crime of murder at all, it must be done with what the law terms malice aforethought, which means a certain degree of deliberation, design, intent, determination." The complaint is that the last clause, defining malice aforethought, tended to mislead the jury ; that this was in effect dividing malice aforethought into degrees, when no division is recognized in the books. We do not think such refinement of reasoning has any application to the practical work of giving instructions to a jury. Moreover the

court made its meaning clear and practical by extended elucidation of the subject, and put the distinction between the two degrees on true ground and in a way that the jury could not fail to understand.

Verdict set aside, and new trial granted.