Mary S. DUNN, a widow, for the use and benefit of herself and Charles Thomas Dunn, Robert Allen Dunn, and Johnny Dale Dunn, minor children, surviving next of kin of Bobby C. Dunn, deceased, Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a foreign corporation, Appellee.

McCULLOUGH TOOL COMPANY, a corporation, Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a foreign corporation, Appellee.

Nos. 8318, 8319.

United States Court of Appeals Tenth Circuit.

Dec. 12, 1966.

Rehearing Denied Jan. 24, 1967.

David H. Sanders, Tulsa, Okl., for appellants.

Ben Franklin, Oklahoma City, Okl. (E. D. Grinnell, Jr., St. Louis, Mo., and Franklin, Harmon & Satterfield, Oklahoma City, Okl., with him on brief), for appellee.

Before MURRAH, Chief Judge, and ALDRICH * and HILL, Circuit Judges.

ALDRICH, Circuit Judge:

This grade crossing case in which the jury found for the railroad raises important practice questions under F.R.Civ. P. 51. The individual plaintiff is the legal representative of a passenger in a truck, owned by the corporate plaintiff, which was driven into the side of a boxcar that was either standing, or just stopping, halfway across the roadway. The time was night. Admittedly a wigwag flasher was not functioning, but, also admittedly, a trainman was standing in the road, on the truck's side, waving an electric lantern. The road, which led down from a hill, presented a 1000 feet unobstructed view of the crossing. The truck forced the trainman to jump out of the way and struck the boxcar without having reduced speed, killing both occupants.

At some time during the trial all parties filed requests for instructions. The plaintiffs' were numbered 1–24, but many contained several sentences, and even paragraphs. The defendant filed 36. Their length does not appear. At the close of the evidence, the court exhibited the requests to counsel with notations as to which ones would be given. An extensive on-the-record conference ensued in which the requests were discussed in minute detail. The court indicated certain areas in which it might reconsider, and stated that some requests would be given in substance. Each party noted its objections to a number of requests of the other that the court had accepted, and

\* By designation.

1. Since, in the absence of a noted exception, the court is presumed to have per-

noted a blanket exception to all of its requests that the court should fail to give.

Following the charge, and before the jury retired, the court stated,

"Now, gentlemen, may it be understood for the record that all objections and exceptions which heretofore were taken by respective counsel for the parties will be considered as if they were now made at this time and entered into the record, and have the same force and effect as if repeated on the grounds heretofore given."

We strongly condemn the practice followed in this case as turning upside down the meaning and purpose of Rule 51. The requirement that the court "inform counsel of its proposed action upon requests prior to their arguments to the jury," is so that counsel may argue intelligently, and is not to provide an opportunity to take exceptions. The court may inform counsel in general terms suitable to this purpose, and need not, and we should think should not, do so in a sentence-by-sentence outline. Cf. Downie v. Powers, 10 Cir., 193 F.2d 760. If the court wishes to hear argument on any matter, we see no reason for it to be on the record.[1] Although we commend the diligence of the district court in considering how it should instruct, from an appellate standpoint the record is confusing to a degree.

The manner in which objections were sought to be preserved after the charge paid lip service to the requirements we have previously voiced, Pittman v. Harvey, 10 Cir., 261 F.2d 44, and cases cited, but defeats their purpose. We scarcely need to repeat that the purpose is at least two-fold, to make it abundantly clear to the court not only what is the party's position, but in what way the charge is believed to depart therefrom, and to give the court full opportunity to make corrections. Franklin v. Shelton, 10 Cir., 250 F.2d 92, cert. den. 355 U.S.

formed its duty of informing counsel, Dallas Ry. & Terminal Co. v. Sullivan, 5 Cir., 108 F.2d 581, there need normally be no record at all.

959, 78 S.Ct. 544, 2 L.Ed.2d 533; Cf. Hayes v. United States, 10 Cir., 238 F.2d 318, cert. den. 353 U.S. 983, 77 S.Ct. 1280, 1 L.Ed.2d 1142; Marshall v. Nugent, 1 Cir., 222 F.2d 604, 615 ("an opportunity upon second thought, and before it is too late.") The duty imposed upon counsel of "stating distinctly the matter to which he objects and the grounds of his objection" cannot normally be performed until the charge has been heard in its entirety. Usually until then it cannot be told "distinctly" to what extent a request has not been given. The court may believe that it has fully done so. As to this an a priori exception "to the extent that the request is not given in substance," meets none of the rule's requirements.[2] Hansen v. St. Joseph Fuel Oil Co., 8 Cir., 181 F.2d 880, 886; Cf. New York, N. H. & H. R. R. v. Zermani, 1 Cir., 200 F.2d 240, 245, cert. den. 345 U.S. 917, 73 S.Ct. 729, 97 L.Ed. 1351. In fact, we find little distinction between what happened in the case at bar and a so-called general exception to the charge, which is universally condemned. See e. g. Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645; Pittman v. Harvey, supra; Miller v. Delaware, L. & W. R. R., 2 Cir., 241 F.2d 116, cert. den. 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed.2d 1438; Sears v. Southern Pacific Company, 9 Cir., 313 F.2d 498, 505.

While we do not say that an objection may never be properly preserved to a charge in advance, we warn parties that there is a heavy burden upon them in such event to show that it was done with sufficient specificity and distinctness, and we caution district courts to be slow in tolerating such procedure. In particular a party may expect to find that he has not preserved any matter where the request could be thought, on the charge as made, to have been given in substance. Even after the charge, it is normally insufficient simply to refer to the requests by number. Hayes v. United States, supra, 238 F.2d at 321–22; Charles A. Wright, Inc. v. F. D. Rich Co., 1966, 1 Cir., 354 F.2d 710, cert. den. 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673. And, finally, we warn counsel that even if the district court acquiesces in a procedure which is insufficient, a party may find that his rights have not been preserved. Allen v. Nelson Dodd Produce Co., 10 Cir., 207 F.2d 296.

In the case at bar the alleged errors in the instructions are so insubstantial that we prefer not to leave them undiscussed, particularly in the light of the seriousness of the case. We do not pause over plaintiffs' criticisms of the court's alleged overuse of the term proximate cause. The issue here is not whether, legalistically, the court was technically accurate in its use of language, but is whether, from a layman's standpoint, the charge understandably and correctly explained to the jury how to decide the issues. We are satisfied that it did. Nor are plaintiffs correct in their contention that the court did not adequately instruct on the difference between what would be negligence by the driver and by the passenger. We turn, accordingly, to the matter which occupied most of the oral argument, the assertion that the instructions were inconsistent.

It was plaintiffs' position, which the court accepted, that the failure of the wig-way to operate was an "invitation" to cross the tracks. They requested the court to rule, and argued before us, that until the occupants of the truck in fact "saw" a contra-indication, the invitation remained open "as a matter of law." The defendant, conversely, took the position that the absence of the flasher was "of no consequence." Neither of these extremes was sound, and neither was accepted by the district court. Plaintiffs argue before us that the defendant could

2. The ultimate in misunderstanding of the rule is exhibited by the defendant's statement in the preargument conference. "[E]ven though it is not necessary in the federal court, I would like the record to show that we take exception for your refusal of our requested instructions." This was totally insufficient. Instead of saying so, the court replied, "Very well."

not at the same time extend the invitation and revoke it, and that the charge was inconsistent. We think the charge was exactly correct.[3] Indeed, it substantially followed plaintiffs' request that the jury be instructed that the nonfunctioning flasher was "an invitation * * * in the absence of other adequate warnings given by the defendant to the plaintiff's driver." The court properly, and sufficiently, put to the jury the issue of whether the other warnings given were adequate.

The plaintiffs repeat the argument of inconsistency in respect to two other matters. We have considered their contentions and find them similarly answerable. No purpose would be served by extending this opinion. Many principles of law were involved in this case. Some operated in plaintiffs' favor, and some in defendant's, and to that extent they conflicted. This did not make the charge "incongruous" or inconsistent. We find it accurate and fair to both parties.

There remains a question of evidence. Appellants contend that it was prejudicial error to allow a uniformed highway officer to testify that he had concluded, on the basis of his observation of the marks left on the truck and the boxcar by their collision, that the box-car had been standing still at the moment of impact. We quite agree that it would have been preferable to have limited the officer to describing what he saw and not to have allowed him to go on to state deductions which the jury could make as easily as he. Padgett v. Buxton-Smith Mercantile Co., 10 Cir., 262 F.2d 39. We do not, however, find that the admission of this testimony requires reversal. Contrary to appellants' contentions, whether the boxcar was entirely motionless when the crash occurred was not, in itself, crucial to their case, and no instruction of the trial court stated or implied otherwise; the crucial question was, rather, whether the boxcar had entered the intersection long enough ahead of the crash for a reasonably prudent person to have been warned in time.[4] As to this, evidence that the train was motionless obviously has some bearing, and the defendant duly produced eyewitnesses, in addition to the police officer who observed the markings, to testify that it had stopped. But plaintiffs' own witness, the only person to testify that the train was moving, indicated on direct examination, and stated explicitly on cross, that the boxcar was already entering the intersection when she first saw the truck appear from over the hill which was 1000 feet away. Furthermore, the total effect

---

3. "You are further instructed that a flashing railroad crossing signal which does not function and is silent, is an invitation to a person familiar with the existence and operation of the flashing signal to proceed across the railroad tracks, and you may find that such silence led Lee and Dunn to believe that the crossing was unobstructed in the absence of other adequate and sufficient warnings given by the defendant to them.

"And, if you find that no other adequate or sufficient warnings were given by the trainmen of the defendant at the crossing and that the failure of the flashing lights to function at the time was a proximate cause of the accident, then in that event your verdict may be for the plaintiffs, if Lee and Dunn were free from contributory negligence.

"In this connection the defendant contends that at the time of the collision its brakeman Campbell was tending the crossing as a flagman and that with his electric lantern he gave warning to Lee and Dunn that the switching operation defendant was conducting over the crossing. If you find that brakeman Campbell was flagging the crossing and that he was in a position while doing so to give Lee and Dunn sufficient and adequate warning of the presence of danger at the crossing and that Lee and Dunn in the exercise of due care could and should have seen the warning of Campbell, and failed to do so, then and in that event your verdict should be for the defendant in both cases."

4. It is true that at one point in the charge the court spoke in terms of the train standing stationary on the track. This, however, was illustrative, only. Reading the charge as a whole makes it clear that the jury must have understood that the issue was presence on the track, not whether there was, or was not, a small amount of motion.

of her testimony was that the boxcar moved only three feet before stopping after the crash. All of the witnesses in the case supported defendant's claim on presence. In such circumstances the question whether the train was moving, necessarily very slowly, at the moment of impact, or had stopped previously, had little if any bearing on the warning afforded by its presence in the crossing. We hold that the police officer's testimony was not prejudicial.

Affirmed.