## State of Vermont v. Stephen Seifert

[557 A.2d 494]

No. 85-530

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed January 27, 1989

*William D. Wright, Bennington County State's Attorney,* and *Deborah A. Barnard, Deputy State's Attorney,* Bennington, for Plaintiff-Appellee.

*Katherine A. Hayes* of *Barr, Sternberg & Moss, P.C.,* Bennington, for Defendant-Appellant.

**Allen, C.J.** The defendant appeals from his convictions of fourth degree arson (13 V.S.A. § 505) and possession of marijuana (18 V.S.A. § 4224(a)). We affirm.

Early one evening a Bennington resident (victim) arrived at his home, parked his vehicle and entered an enclosed breezeway between his garage and home. He there detected a strong odor of gasoline. He noted the smell was even stronger in his home and being unable to locate the source contacted the fire department. He then continued his efforts to locate the source. While proceeding to his garage he observed a person standing beside an evergreen tree at the rear of his property. Upon the victim's approach the person jumped a four-foot-high chain link fence and ran across an open field. The backyard of the victim was illuminated by a spotlight, and the field was well illuminated by a street light and lights in a nearby recreational center. The victim observed that the person was slim and tall with longish black hair. He was wearing a plaid jacket and carrying a white container with a spout sticking out of it.

Officer Behan of the Bennington Police Department arrived at the victim's home shortly after the person ran away, and the victim related what he had observed to the officer. The officer then contacted the police dispatcher and requested that he notify other officers to be on the lookout for a person matching the

description. Officer Behan and the victim then examined the area where the odor appeared to be strongest. This was near the breezeway leading between the house and the garage. A shiny liquid was seen on the grass and the side wall, which the victim believed was gasoline. A book of matches with a partially burned cigarette inside it, described by Officer Behan as "a poor man's fuse," was also found. The cigarette was a Camel, and the matchbook advertised a nearby mini-mart.

Officer Coyne, an off-duty Bennington police officer, heard the request to be on the lookout on a police scanner in his own car and observed the defendant walking on a nearby street about three blocks from the victim's house. The defendant was tall and wearing a plaid jacket or shirt. He was not carrying a container. The officer, who was not in uniform, got out of his car and identified himself to the defendant. The officer also asked his wife to drive their car home and call the police station to advise Officer Behan that he had the subject that Officer Behan was looking for. A strong odor of gasoline was noted by the officer when he encountered the defendant. The defendant was told that Officer Behan desired to speak with him. The defendant and the officer waited a couple of minutes for a ride to Behan's location, and the defendant then suggested that they walk to the police station. After they had started to walk to the police station, they were met by a third Bennington police officer who had been dispatched by Officer Behan. The defendant was asked by the officers if he would go with them to see Officer Behan. He replied that he would and got into the front seat of the police cruiser operated by the third officer. He was transported to the victim's house and upon arrival there, while still in the police vehicle, was confronted by the victim, who said, "That's him." Defendant was then placed under arrest and taken to the police station. He was searched at the station and Camel cigarettes, matches advertising the nearby mini-mart and a small plastic bag of marijuana were found on his person.

Before trial, the defendant moved to suppress any and all evidence resulting from the detention and transport of the defendant to the victim's house on the grounds that this constituted an arrest without probable cause. He also moved to suppress any evidence of the identification of the defendant by the victim because it was the result of an improper and unduly suggestive identification procedure. The motions were denied. At the conclusion of

the trial the defendant moved for a judgment of acquittal on the charge of attempted arson on the ground that the State had failed to prove that there had been an attempted arson of a dwelling house, arguing that an attempt to burn the breezeway was not an attempt to burn the house. The trial court denied this motion. The defendant also moved to dismiss all charges because the State had destroyed the items seized at the time of his arrest, including his jacket, contending that the absence of this evidence prevented him from presenting an effective defense. This motion was denied, and the trial court also declined to give a requested Zamora* instruction whereby the jury might infer that the evidence, had it been available at the trial, would have been favorable to the defendant and would have tended to show that he was not guilty of the attempted arson.

The defendant was found guilty of both charges. His motion for a new trial was denied.

On appeal, defendant argues that the trial court erred (1) in not finding that the destruction of all of defendant's clothing was a denial of due process, (2) in finding that defendant's detention and transport to the scene was not an illegal arrest lacking probable cause, (3) in finding that the improperly suggestive identification procedure did not deny defendant's right to due process, and (4) in denying defendant's motion for judgment of acquittal because the State failed to prove that there was an attempted arson of a dwelling house.

## I.

After his arrest the police obtained a search warrant and seized the clothing of the defendant. The clothes, along with other items taken from the defendant, were sent to the state laboratory to be examined for the presence of substances that accelerate the spread of fire. A state police corporal testified at the hearing on defendant's motion to dismiss that after testing he placed the clothing and personal effects seized from the defendant in a garage at the State Police Barracks because of his concerns about the volatile nature of the evidence. The officer then testified that there was a "general garage cleaning" at the barracks, and the evidence was removed through his carelessness and was disposed of. The officer further testified that he had heard that the defend-

---

* *People* v. *Zamora*, 28 Cal. 3d 88, 615 P.2d 1361, 167 Cal. Rptr. 573 (1980).

ant's case had been disposed of and was no longer pending. In fact, a companion case charging the defendant with aggravated assault had been dismissed following pretrial hearings. The trial court denied defendant's motion to dismiss, finding that while the State had been negligent in not preserving the evidence, the other evidence of guilt was substantial, applying the "pragmatic balancing" test set forth in *State* v. *Bailey,* 144 Vt. 86, 92-97, 475 A.2d 1045, 1048-52 (1984), and *State* v. *Smith,* 145 Vt. 121, 126, 485 A.2d 124, 127-28 (1984).

■ It is unnecessary to engage in a lengthy discussion of whether the court erred in its balancing analysis because of the recent decision of the United States Supreme Court in *Arizona* v. *Youngblood,* ___ U.S. ___, 109 S. Ct. 333 (1988). There, an expert witness testified that the respondent might have been completely exonerated of sexual assault on a minor had the police performed timely tests on properly preserved semen samples found on the victim's clothing. The Court refused to impose "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution" and instead held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at ___, 109 S. Ct. at 337. As Justice Blackmun points out in his dissent, *id.* at ___, 109 S. Ct. at 339, the line between "good faith" and " bad faith" is anything but bright, but in the circumstances here presented, we agree with the trial court that the actions of the officer could not be characterized as "bad faith." There is no claim of animus by the officer toward the defendant or a conscious effort to suppress exculpatory evidence. Indeed, the defendant does not impute "bad faith" to the officer, but only claims that his actions amounted to gross negligence.

Defendant's argument also fails because the destroyed evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California* v. *Trombetta,* 467 U.S. 479, 489 (1984).

The defendant's clothing was seized for the purpose of ascertaining the existence of accelerants. The analysis of the clothing had been completed by the time the evidence was destroyed and the test results were available. No accelerants, including gasoline,

had been detected. The claimed exculpatory value was not then apparent. The defendant argues that had his jacket been available for trial it would illustrate that it did not match the description given by the victim. Not surprisingly the State argues that it was prejudiced by the lost clothing because its introduction of the evidence at trial would have bolstered the identification by the victim. While this argument cannot be resolved, it can be said that the defendant was able to offer comparable evidence. Witnesses at trial gave varying descriptions of the shirt or jacket, and defendant was able to effectively use these differences to cast doubt on the identification.

Defendant further contends that even if dismissal were too drastic a remedy for the loss of the clothing, he was entitled to his requested instruction that the jury might infer that the lost evidence would be favorable to him and that its loss alone might create a reasonable doubt as to his guilt. At the charge conference, the court indicated that it did not intend to grant the requested instruction, to which the defendant responded that he could understand the court's reluctance to do so. He then requested that the court instruct the jury that "they shouldn't speculate as to what the effect of the evidence would be." The court so charged with the further instruction that the jury should not speculate about whether the lost evidence would have been favorable to either party. No objection was taken to the charge as given. A party seeking to assign as error any omission from the charge must object thereto before the jury retires to consider its verdict. V.R.Cr.P. 30. A party who has requested an instruction that has not been given is not relieved of this requirement. *Collette* v. *Bousley,* 141 Vt. 373, 374, 449 A.2d 936, 937 (1982); *McCrea* v. *State,* 138 Vt. 517, 520, 419 A.2d 318, 319 (1980). Reversal on appeal would result only if the omitted instruction constituted plain error. See *State* v. *Hicks,* 148 Vt. 459, 464, 535 A.2d 776, 778-79 (1987). Because we have already determined that defendant's rights to a fair trial were not violated by the evidence loss, there is no plain error. Cf. *State* v. *Duff,* 150 Vt. 329, 337, 554 A.2d 214, 219 (1988).

## II.

■ The defendant argued in the trial court that Officer Coyne's initial stop was not supported by reasonable suspicion and that

his transport to the scene transformed the investigatory stop into an arrest without probable cause. He concedes on appeal that the officer had the reasonable suspicion required to warrant a brief stop and detention, but continues to maintain that the transport of the defendant to the scene of the alleged crime constituted an arrest without probable cause. The trial court found that the officers asked the defendant if he would accompany them to see Officer Behan, that the defendant consented to do so and got into the front seat of the police cruiser which then took him to the victim's residence. It further found that defendant was not restrained in any way and that he was free to leave. These findings are unchallenged. The defendant argues that because he assumed that Officer Behan was at the police station his consent was uninformed and therefore invalid. The consent, however, was to speak to Officer Behan, and no suggestion is made that the officers misled or otherwise engaged in any deceptive practice which would vitiate the consent. The trial court did not err in concluding that the defendant was not under arrest during his transport to the victim's residence.

## III.

■ The defendant next claims that the trial court erred in denying his motion to suppress evidence of his identification by the victim and any evidence springing from that identification. The motion was denied after an evidentiary hearing. The court concluded that the out-of-court identification was reliable. Trial was had before a different judge, and the defendant neither renewed his motion nor objected when the in-court identification of the defendant was made by the victim. The failure to object at trial before a judge who never had the opportunity to consider the objection amounts to a waiver of this claim. *State v. Jacques,* 150 Vt. 508, 510, 554 A.2d 655, 657 (1987).

## IV.

■ The defendant moved for judgment of acquittal at the conclusion of the evidence, claiming that the State had failed to prove that there had been any attempted arson on a "dwelling house" as charged in the information, arguing that the evidence indicated that gasoline was placed only in an area four to five feet along the rear of the breezeway. The trial court denied this mo-

tion, finding that the breezeway was actually a part of the house and that "if there is a fire that starts in the breezeway, it's either going to burn out the garage or house or both." The breezeway was an enclosed structure connecting the victim's garage and house. A fire would easily and quickly be communicated from one to the other. The court did not err in concluding that the breezeway was a part of the "dwelling house." *Spears* v. *State,* 92 Miss. 613, 46 So. 166 (1908).

*Affirmed.*