## State of Vermont v. William F. Wheelock III

[609 A.2d 972]

No. 89-475

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 3, 1992

*M. Patricia Zimmerman*, Windsor County State's Attorney, White River Junction, for Plaintiff-Appellee.

*Charles Martin* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Morse, J.** Defendant appeals his conviction of second-degree murder for shooting and killing James Brillon during a drug and alcohol binge. Defendant claimed he shot the victim because the victim was attacking him with a knife. He raises three issues, all concerning the trial court's instructions to the jury. Defendant first contends that the trial court erred in its self-defense charge when it instructed the jury to assess the reasonableness of his belief without taking into account his intoxication. Second, he assigns error to the court's refusal to instruct the jury on the theory of "imperfect self-defense." Third, he claims error based on the trial court's failure to instruct the jury that it could draw inferences, favorable to the defense, from the State's failure to dust for fingerprints on knives in the kitchen at the crime scene and to test defendant for intoxication when he was arrested. We affirm.

Defendant killed Brillon with a single round from a shotgun fired at close range. The shooting occurred in the early morning at the apartment of the victim's girlfriend. Both defendant and the victim had ingested alcohol, cocaine, valium and marijuana prior to the shooting. Confrontations between the two punctuated the night. The killing occurred when the victim entered the living room; defendant, who testified he believed the victim had a knife, shot him in the chest. During the investigation, police

found no knife near the body, and did not search for one in the apartment. When defendant was apprehended, he possessed a bottle of partially consumed scotch. Police did not administer a test to determine the level of alcohol or presence of drugs in defendant's blood.

## I.

Defendant requested the court to instruct the jury on self-defense, in relevant part:

[O]ne may use deadly force in defense of his life, limb, or in fear of bodily injury if it reasonably appeared to the accused that it was necessary to use the force which he did use.

The trial court's instruction on self-defense was as follows:

[T]he defendant must have a reasonable expectation of immediate harm. That is, the expectation of harm must be based upon reason and not upon fancied or unfounded fear. Also it must be such an expectation as a reasonable person might entertain under the prevailing circumstances. Therefore, you should measure the expectation of harm by a standard of what a hypothetical reasonable ordinary person might expect in the same situation as you find existed and which the defendant was in. You should determine again taking into account all of those circumstances if such a person would have a reasonable expectation of harm.

In doing so you should take into consideration such factors as shown by the evidence as a reasonable person in the defendant's shoes—such as what he knew with the victim, what their relationship was or had been, what their prior interaction had been, including hostile or aggressive conduct, if any, by the victim and any other factors supported by the evidence that you consider relevant. You should not measure the expectation of harm by a standard of what a drug or alcohol-impaired person might expect. You should measure the expectation by what a non-impaired—that is a reasonable person—might expect, not however, by what such a person in the defendant's shoes and position might expect.

During a lengthy charge conference, defendant expressed dissatisfaction with the instruction as proposed, saying in part that

> there is no reasonable person standard in Vermont in terms of self-defense. And that's our primary objection I would say. There's a secondary problem here that I think we need to discuss. . . . I think that the intent of this charge here is that you are saying you can't consider someone's state of intoxication in determining the reasonableness of their expectation. I think what you're saying here, basically, [is] "If I'm drunk, I am still charged with the responsibility of accurately perceiving events in order to invoke self-defense."

■■ According to V.R.Cr.P. 30, as interpreted in our cases, failure to object to an instruction after it is given to the jury is considered a waiver of any error even if the substance of the objection is made known before the jury charge. *State v. Roberts*, 154 Vt. 59, 71–72, 574 A.2d 1248, 1253–54 (1990); *State v. Hoadley*, 147 Vt. 49, 53, 512 A.2d 879, 881 (1986). In this case, however, the court, after instructing the jury, told the parties that any objection made *before* the jury charge would be considered preserved. We shall, therefore, reach the issue, but caution that such advice is contrary to the rule, and the court should require that any objections be placed on the record after the charge is given to the jury. The primary reason for the rule is to give the trial court one last opportunity to avoid an error. In addition, our review is made easier by such a practice because objections during a charge conference often are vaguely worded and are interspersed during lengthy discussion. Here, for example, the charge conference consumed over a hundred pages of the transcript. By requiring post-charge objections, counsel is forced to focus on a succinct recitation of specific itemized objections enabling this Court to understand what defendant intended to preserve for appeal. Review on appeal also may be hampered by the absence in the record of the proposed instructions given to counsel to discuss at a charge conference, as in this case.

Defendant's apparent concern with the court's proposed instruction was that the jury might find his claim of self-defense unreasonable because he had been intoxicated at the time and his memory of the killing was poor. Defendant did not want the

jury to conclude that an intoxicated person may never be capable of acting reasonably in self-defense. In his motion for a new trial, defendant reiterated his concern:

> Defendant submits that the court's jury instructions upon the issue of self defense were at variance with Vermont law. The court instructed the jury to measure the self defense claim by a "hypothetical reasonable ordinary person" standard. In so doing, the Court instructed the jury to ignore evidence of drug and alcohol impairment. Vermont does not measure self defense by the hypothetical reasonable ordinary person standard.

The well-established doctrine of self-defense provides that a defendant who "kills or wounds another . . . [i]n the just and necessary defense of his own life . . . shall be guiltless." 13 V.S.A. § 2305(1). Our case law requires that self-defense is "just and necessary" when the defendant's belief of imminent peril and of the need to repel that peril with deadly force is reasonable. *State v. Darling*, 141 Vt. 358, 361, 449 A.2d 928, 929 (1982).

The right of self-defense does not require that one be actually assaulted, so long as the defendant's belief that he is in danger is founded on reasonably perceived circumstances. *State v. Wood*, 53 Vt. 560, 561, 567 (1881). In *State v. Doherty*, 72 Vt. 381, 396–97, 48 A. 658, 663 (1900), the reasonableness of defendant's belief was described as follows:

> [A]lthough it might not have been necessary to have killed [the victim], *if in view of his fear, fright, nervousness, or cowardice, it reasonably seemed to him,* he could not be convicted of murder. . . . It is not whether the necessity actually existed, but *whether in fact it reasonably seemed so to the respondent, under all the circumstances of the case,* and . . . the court [properly instructed] "If the circumstances were such as reasonably to lead the respondent to think that he was in danger of being killed or of great bodily harm by an assault from [the victim], he had a right to defend himself . . . ."

(Emphases added.) A jury, then, must assess the reasonableness of a defendant's apprehension, taking into account not only the circumstances with which he is confronted, but his individual attributes as well. Our law does not hold a nervous coward

and a fearless bully to an identical reasonable person standard. See, e.g., *State v. Rounds*, 104 Vt. 442, 451, 160 A. 249, 251 (1932) (justification depends on whether jury finds that necessity reasonably appeared to the defendant); *State v. Tubbs*, 101 Vt. 5, 23, 139 A. 769, 776 (1928) (defendant may lawfully take a life if it "reasonably appear[s] to him" to be necessary); *McQuiggan v. Ladd*, 79 Vt. 90, 105–06, 64 A. 503, 507 (1906) (justification requires more than honest belief; proper inquiry for jury is whether necessity "reasonably appeared to [defendant]").

■ The trial court qualified the words, "measure the expectation of harm by a standard of what a hypothetical reasonable ordinary person might expect in the same situation," by placing defendant "in the same situation as you find existed and which the defendant was in" at the time of the killing. Later in the instruction the court stated, "You should take into consideration such factors as shown by the evidence as a reasonable person *in the defendant's shoes* [would]." (Emphasis added.) The jury was thereby instructed to consider the physical and mental traits of the accused, as well as the attendant situation and circumstances. Otherwise, "in the defendant's shoes" has no instructional value.

A defendant must have an honest belief of imminent peril, but that honest belief by itself is insufficient to invoke the defense. The belief must be grounded in reason. The jury must first assess the honesty of the belief, which is a purely subjective inquiry. It must then determine whether the particular defendant had an objective, discernible reason for such belief. As the trial court instructed, the "expectation of harm must be based upon reason and not upon fancied or unfounded fear."

The court instructed the jury to disregard defendant's intoxication. This was proper. Although individual attributes, such as age, size, strength, stamina, courage and assertiveness, are relevant to whether defendant's beliefs are reasonable, voluntarily induced states of mind such as those caused by drug and alcohol ingestion are not. See generally W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton on the Law of Torts § 32, at 175–78 (5th ed. 1984) ("The person who is blind or deaf, or lame, or is otherwise physically disabled, is entitled . . . to have allowance made by others for his disability . . . [but] it is uni-

formly held that voluntary or negligent intoxication cannot serve as an excuse for acts . . . which would otherwise be negligent."). Intoxication may be considered in reducing the culpability of a crime from, for example, murder to manslaughter, but under a claim of self-defense, it cannot excuse a defendant from any criminal culpability. 1 W. LaFave and A. Scott, Substantive Criminal Law § 4.10(d), at 558 (1986).

██ Even if it was error to interject the "hypothetical reasonable person" language into the instruction on self-defense, it was harmless. The only trait defendant claimed separated him from a reasonable person was his intoxication. He did not suggest he was overly sensitive to perceptions of danger or had any other character trait that would reasonably support his action in shooting the victim.

## II.

Defendant also maintains that the trial court's failure to instruct the jury on the doctrine of "imperfect self-defense" was error and asks this Court to adopt that doctrine as articulated in *State v. Faulkner*, 301 Md. 482, 483 A.2d 759 (1984). Imperfect self-defense, by that formulation, operates to mitigate murder to manslaughter when the jury finds that the accused harbored an honest but unreasonable belief in the need to defend by deadly force. *Id.* at 500, 483 A.2d at 769 ("Logically, a defendant who commits a homicide while honestly, though unreasonably, believing that he is threatened with death or serious bodily harm, does not act with malice."). The defendant requested the following instruction:

> If you find that the Defendant believed it was necessary to kill the deceased in order to save himself from death or great bodily harm, and the Defendant's belief was reasonable because the circumstances at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but the accused, although without murderous intent, was the aggressor or used excessive force or had a reasonable opportunity to retreat, the Defendant would have lost the benefit of perfect self defense. However, in these situations the accused may have acted and exercised the imperfect right of self defense and would be guilty of

voluntary manslaughter. Similarly, if the jury finds that the Defendant honestly believed that the use of force was necessary but because of his diminished mental capacity his subjected belief was unreasonable under the circumstances, then your verdict would be one of guilty to voluntary manslaughter as well.

Again, no objection was registered by defendant after the jury charge, but, for reasons given previously, we reluctantly reach the issue. Imperfect self-defense was not totally ignored, but was put before the jury in the guise of a well-established defense that mitigates murder to manslaughter, diminished capacity.

■ Manslaughter is defined in two categories. *Voluntary* manslaughter is the intentional killing of another human being done with a state of mind of "sudden passion or great provocation," or some other mental state caused by "diminished capacity." Therefore, extenuating circumstances affecting a defendant's state of mind negate malice in voluntary manslaughter. *State v. Duff*, 150 Vt. 329, 331, 554 A.2d 214, 215 (1988) ("sudden passion" or "great provocation" or "mental disabilities, not necessarily amounting to insanity," operate "to preclude a capability of forming . . . malice") (*overruled on other grounds, State v. Powell*, 158 Vt. 280, 608 A.2d 45 (1992)).

■ *Involuntary* manslaughter is the killing of another human being as a result of criminal negligence. *State v. Stanislaw*, 153 Vt. 517, 525, 573 A.2d 286, 291 (1990). Malice is absent from involuntary manslaughter because the defendant did not intend to bring about the death of another, but instead failed to perceive risks apparent to a reasonable person amounting to a *"gross deviation"* from reasonable care, a higher standard than that required for civil liability. *Id.* (emphasis in original).

Here, defendant intended to kill the victim. He claimed he reasonably believed that he had to shoot him to save himself, or, if his belief was unreasonable, his diminished capacity from intoxication was the cause of his unreasonable belief in apprehending the extent of danger posed by the victim. Couching his defense in terms of imperfect self-defense was essentially indistinguishable, for purposes of this case, from asserting the defense of "aroused anger" or diminished capacity. Had the jury

been persuaded that defendant killed the victim in the "sudden heat of passion" or as a result of "great provocation," he would have been found guilty of voluntary manslaughter. The jury was given that opportunity. The court instructed that acting "in sudden passion or from extreme provocation will negate or disprove malice aforethought," making the crime voluntary manslaughter. Similarly, the court instructed the jury that diminished capacity reduces murder to voluntary manslaughter:

> In general, diminished capacity refers to a mental disability of the defendant at the time of the alleged commission of the offense which precludes or prevents the defendant from forming a specific intent or having the required state of mind which is an essential element of the offense. . . . [It] results in malice being negated . . . .
>
> . . . .
>
> . . . [D]iminished capacity recognizes that voluntary consumption of drugs or alcohol or both may impair a person's mental functioning to such an extent as to prevent that person from forming the specific intent or intents that are a necessary element of the offenses.
>
> . . . .
>
> . . . [I]n considering diminished capacity, you should look to the evidence as you find it to be with regard to the extent of the Defendant's ingestion of alcohol and or drugs and the evidence as to the observed effects upon him and determine to what degree his mental ability to form the specific intent was impaired.

Defendant does not quarrel with the adequacy of the instructions regarding the degrees of homicide, the requirement of malice as a prerequisite to a murder conviction, or the doctrine of diminished capacity mitigating the crime from murder to manslaughter. His defense theory that he was guilty of a homicide no more severe than manslaughter was adequately placed before the jury.

## III.

Defendant's last point is that the trial court wrongly refused to instruct the jury that it could draw inferences, favorable to the defendant, from the State's failure to collect certain evi-

dence during the investigation. He argues that he was disadvantaged by the failure of police investigators (1) to search at the crime scene for a knife bearing the victim's fingerprints, with which, he claimed, the victim threatened him just prior to the shooting, and (2) to administer a test to determine his blood-alcohol concentration immediately after his arrest. Defendant contends that this evidence would have aided his defense: the knife by corroborating his self-defense claim and the blood test by confirming the degree of intoxication necessary to establish the defense of diminished capacity.

 There could arise situations in which negligent conduct of the police is sufficiently prejudicial to the defense to warrant a corrective instruction. The court, however, did not abuse its discretion in declining the requested instruction. Any prejudice to defendant was practically nil. No knife was found near the victim's body after the shooting and, because numerous knives were in the kitchen on the fateful night, it would not have been unusual for the victim's prints to have been on one or more of them. Defendant was free, of course, to seek an analysis of the knives, and he failed to do so. As to the other evidentiary point, defendant appeared intoxicated to the police at the time of arrest, and the record is replete with evidence of defendant's copious ingestion of drugs and alcohol. Although blood-alcohol analysis probably would have confirmed his extreme intoxication, this fact was not contested at trial. See *State v. Seifert*, 151 Vt. 66, 69–71, 557 A.2d 494, 497–98 (1989).

*Affirmed.*

**Dooley, J.,** concurring. I fully concur in Justice Morse's opinion for the Court. Because the issue will recur, I add that I do not believe that we should adopt the doctrine of "imperfect self-defense" to reduce murder to manslaughter in any case. I note that a number of states that have adopted this doctrine have done so by legislation. See 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.11(a) n.6 (1986). If the doctrine is to be adopted, it should be done by the Legislature.

**Allen, C.J.,** dissenting. I dissent because the majority opinion fails to address defendant's primary objection to the jury instruction on self-defense. Defendant argues that the court

erred when it instructed the jury to measure the reasonableness of defendant's belief in the need to use deadly force against the standard of the hypothetical reasonable person. I agree with defendant because the instruction is contrary to our cases on the law of self-defense. I write also to state my disagreement with the majority's interpretation of V.R.Cr.P. 30.

## I.

It is unclear whether the majority is holding that the self-defense instruction in this case was a proper statement of the law or was harmless error. I believe it was neither. The charge both incorrectly stated the law and tended to mislead and confuse the jury.

The majority fails to address defendant's primary objection because it assumes that defendant's two distinct objections to the charge on self-defense are really one objection. Defendant objected to the proposed instructions by stating that "there is no reasonable person standard in Vermont in terms of self-defense. And that's our primary objection I would say." He requested the court to instruct the jury that one may use self-defense "if it reasonably appeared *to the accused* that it was necessary." (Emphasis added.) Defendant also said, "there's a secondary problem here that I think we need to discuss. . . . I think . . . you are saying [the jury] can't consider someone's state of intoxication in determining the reasonableness of their expectation." These separate concerns are apparently misunderstood by the majority, which writes that "[d]efendant's *apparent* concern with the . . . instruction was that the jury might find his claim of self-defense unreasonable because he had been intoxicated at the time and his memory of the killing was poor." (Emphasis added.) Because defendant expressly stated two distinct objections, there is no need to search for his apparent concern.

While I agree with the majority that the court did not err when it instructed the jury to disregard defendant's intoxication when assessing the reasonableness of his belief in the need to use deadly force, I believe that the court did err when it instructed on the "hypothetical reasonable person" standard. Defendant was entitled to have the jury receive a clear and correct statement of the law that was neither confusing nor mis-

leading. See *State v. Gokey,* 136 Vt. 33, 36, 383 A.2d 601, 602–03 (1978) (incorrect statement of law in jury instruction that tends to mislead and confuse the jury warrants reversal); *State v. Hanson,* 134 Vt. 227, 232, 356 A.2d 517, 520 (1976) (instruction that is apt to confuse or mislead the jury is erroneous); *State v. Audette,* 128 Vt. 374, 378, 264 A.2d 786, 789 (1970) (court has primary duty to instruct clearly on applicable law).

The court called upon the jury to "measure the expectation of harm by a standard of what a hypothetical reasonable ordinary person might expect in the same situation as you find existed and which the defendant was in." The court also instructed the jury to consider the "reasonable person" as if "in the defendant's shoes." Later, the court stated that "[y]ou should measure the expectation by what a non-impaired—that is a reasonable person—might expect, not, however, by what such a person in the defendant's shoes and position might expect." Twice, then, the court asked the jury to place the hypothetical reasonable person in defendant's situation or "shoes." Later, it instructed that they not consider his "shoes and position."

The "hypothetical reasonable ordinary person" has no place in the law of self-defense in Vermont. Dating back to *State v. Doherty,* 72 Vt. 381, 48 A. 658 (1900), this Court consistently has made clear that a legal right to use deadly force rests on the reasonableness of the accused's, not a hypothetical reasonable person's, apprehension of danger. The Court wrote:

> [A]lthough it might not have been necessary to have killed [the victim], *if in view of his fear, fright, nervousness, or cowardice, it reasonably seemed to him,* he could not be convicted of murder. . . . It is not whether the necessity actually existed, but *whether in fact it reasonably seemed so to the respondent, under all the circumstances of the case* . . . .

*Id.* at 396–97, 48 A. at 663 (emphases added). The rule that a defendant's belief must be reasonable to him, rather than to a reasonable person, has been often repeated. See *State v. Rounds,* 104 Vt. 442, 451, 160 A. 249, 251 (1932) (justification depends on whether jury finds that necessity reasonably appeared to defendant); *State v. Tubbs,* 101 Vt. 5, 23, 139 A. 769, 776 (1928) (defendant may lawfully take a life if it "reasonably appear[s] to him" to be necessary); *McQuiggan v. Ladd,* 79 Vt.

90, 105, 64 A. 503, 507 (1906) (proper inquiry for jury is whether necessity "reasonably appeared to [defendant]").

The trial court, when it instructed the jury to "measure the expectation of harm by a standard of what a hypothetical reasonable ordinary person might expect in the same situation," committed reversible error because it did not clearly and accurately state the law of self-defense. The jury should have been instructed to consider the physical and mental traits of defendant, as well as the attendant circumstances. "[T]he jury's consideration of the unique physical and psychological characteristics of an accused allows the jury to judge the reasonableness of the accused's actions against the accused's subjective impressions . . . rather than against those impressions . . . that a hypothetical reasonably cautious person would have under similar circumstances." *State v. Leidholm*, 334 N.W.2d 811, 818 (N.D. 1983). Whether defendant differed from the hypothetical reasonable person, and to what degree, are matters for the jury and do not diminish his entitlement to a proper statement of the law.

Inconsistent statements within the instruction concerning whether the jury should consider defendant's situation compound the error. Although the final statement—instructing the jury not to place the "reasonable person" in defendant's shoes or position—apparently addressed defendant's intoxication, its broad language and direct contradiction of earlier instructions serve to confuse and mislead. How could the jury not be confused by directly contradictory statements? In conclusion, the self-defense instruction in this case both failed to accurately state the law and tended to confuse and mislead the jury. Cf. *State v. Williams*, 154 Vt. 76, 81, 574 A.2d 1264, 1267 (1990) (no error where charge as a whole breathes "the true spirit and doctrine of the law," and there is no reasonable basis to find that the jury was misled by it).

## II.

The majority cautions that failure to specifically renew objections after the charge, even where the trial judge states that objections made prior to the charge would be preserved, could result in waiver under V.R.Cr.P. 30. Specific objections after the charge, the majority argues, will "aid our review." This

cramped interpretation of Rule 30 creates a trap for unwary counsel and is not supported by either the language of the rule or case law.

Rule 30 requires parties to object to "any portion of the charge or omission therefrom . . . . before the jury retires to consider its verdict." The rule does not specify, however, that the objection be made immediately before the jury retires. Indeed, the purpose of the rule—to permit the court to correct its errors—is better served by proper objection at the charge conference. Moreover, I cannot imagine how an objection on the record after the charge aids our review better than a precise objection on the record before the charge where, as here, counsel was fully aware of the text of the instruction when the objection was made.

Neither case relied upon by the majority supports the proposition for which it is advanced. *State v. Roberts*, 154 Vt. 59, 72, 574 A.2d 1248, 1253–54 (1990), does not involve the proper timing of objection under V.R.Cr.P. 30 but rather considers the issue of assertion of new grounds for objection on appeal. In that case, we merely recognized that the rule serves to "afford the trial court an opportunity to correct any error or oversight." *Id.* This opportunity is better provided by precharge objections. *State v. Hoadley*, 147 Vt. 49, 52–53, 512 A.2d 879, 881 (1986), involves the failure to specifically state the grounds for objection and the failure to object at all. It does not address the proper timing of objections.

The better approach is to provide opportunity for appropriate objections at the precharge conference and then, after the charge, permit counsel to note for the record that earlier objections are renewed. Any new objections, of course, would have to be fully stated. The federal circuit courts of appeals which have confronted the issue under the identical federal rule have adopted this approach. The court of appeals for the Ninth Circuit praised it as saving time. *Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 744 (9th Cir. 1954). The court of appeals for the Seventh Circuit noted that the language of the rule did not prohibit the practice and concluded that it "clearly enables the trial judge, *in advance of instructing the jury*, to have erroneous aspects pointed out to him." *United States v. Hollinger*, 553 F.2d 535, 542 (7th Cir. 1977) (emphasis

in original). The court of appeals for the Tenth Circuit recently aligned itself with the advocated approach: "We note parenthetically that [our earlier case addressing Rule 30] does not *require* objection to the court's instructions to be taken after the instructions are given to the jury. To the extent that it has been so read it has been persuasively criticized." *United States v. Phillips*, 869 F.2d 1361, 1369 (10th Cir. 1988) (explaining *Dunn v. St. Louis-San Francisco Ry.*, 370 F.2d 681 (10th Cir. 1966)) (emphasis in original). The court of appeals for the Second Circuit has noted that Rule 30 "does not require a lawyer to become a chattering magpie." *United States v. Kelinson*, 205 F.2d 600, 601–02 (2d Cir. 1953) (reversing trial court for failing to give instruction that it told counsel it would give, although no objection made at the conclusion of charge). I agree with the approach adopted by these federal circuits.

I am authorized to say that Justice Gibson joins in this dissent.