2013 VT 102



Straw v. Visiting Nurse and
Hospice of VT/NH (2012-149)

 

2013 VT 102

 

[Filed 18-Oct-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 102
 
  


 No. 2012-149
 
  


 Michelle M. Straw
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Windsor Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
 Visiting Nurse Association and
 Hospice of VT/NH
 
 
 March Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Theresa
 S. DiMauro, J.
 
 
  
 
 Norman E. Watts and Stefan Ricci of Watts Law Firm, PC,
Woodstock, for Plaintiff-Appellant.

 

Edward M. Kaplan and Sarah S. Murdough of Sulloway &
Hollis, P.L.L.C., Concord, 

  New Hampshire, for Defendant-Appellee.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Burgess and
Robinson, JJ.

 

 

¶ 1.            
DOOLEY, J.   Plaintiff Michelle Straw appeals the
judgment order of the superior court, pursuant to a jury verdict, dismissing
her case for breach of an implied employment contract against defendant
Visiting Nurse Association and Hospice of Vermont and New Hampshire
(VNA).  She argues that the jury instructions in her case were erroneous
and prejudicial because they failed to instruct on the standard for “just
cause” termination.  We affirm.

¶ 2.            
Plaintiff is a licensed Advanced Registered Nurse Practitioner who
worked for a number of years as a hospice triage coordinator for VNA, answering
patient and family calls to VNA’s telephone hotline.  During her years of
employment, she generally received favorable performance evaluations.  

¶ 3.            
Plaintiff was hired as an at-will employee, and the VNA employee
handbook states in many instances that employment with the organization is “at
will.”  Despite those assertions, the handbook also contains a
corrective-action disciplinary policy—though the language goes to great lengths
to emphasize that it is not mandatory.  The handbook introduces this
policy by saying: “When, on occasion, an employee’s performance or conduct
standards are not acceptable, the [VNA] strives to preserve acceptable
standards of conduct and job performance through constructive criticism and/or
corrective action.”  The “common course of constructive
criticism/corrective action” begins with a verbal discussion between a
supervisor and an employee and continues through a written warning, a
suspension, and termination.  According to VNA management, immediate
termination is limited to severe misconduct that “impacts patient care and
safety.”  

¶ 4.            
In 2009, VNA received a complaint from the family member of a patient
claiming that plaintiff had been rude and unprofessional to her.  The
result of the conversation with plaintiff was that the patient was transported
to a hospital, where he died, despite his expressed wish to die in his
home.  Plaintiff’s supervisor conducted an investigation, which included
speaking with the family member of the patient and consulting with plaintiff to
see what she remembered about the incident.  Plaintiff sent an email with
her recollection of the case based on her log and progress notes.  After
consulting with the family member of the patient, but without speaking with
plaintiff, VNA’s president decided to terminate plaintiff’s employment without
engaging in any of the steps of constructive criticism and/or corrective action
described in the employee handbook.

¶ 5.            
Plaintiff disputes the family member’s characterization of the event
entirely.  While she recognizes that the behavior detailed in the
complaint, if true, would be unprofessional and could be grounds for
termination, she denies any inappropriate behavior whatsoever.  At the
time that she made the decision to terminate plaintiff, VNA’s president was not
aware that plaintiff denied having acted in the way reported by the family
member.  

¶ 6.            
After being terminated, plaintiff brought suit against VNA for violation
of the Vermont Fair Employment Practices Act and for wrongful termination, the
latter claim being based on separate counts of promissory estoppel and breach
of an implied employment contract that had been created by the dissemination of
the employee handbook.[1] 
Summary judgment was granted to VNA on the age discrimination and the
promissory estoppel claims, but the implied-employment-contract claim went to a
jury trial.[2] 


¶ 7.            
Plaintiff prepared proposed jury instructions and a proposed jury
verdict form.  The proposed instructions included a section on just cause
for termination, indicating that the jury had to find whether plaintiff
committed the acts the complainant alleged, and if she did, whether her conduct
“constituted just cause warranting her termination.”  The instruction went
on to say that just cause required a determination that “it is reasonable to
discharge an employee because of the alleged conduct” and that plaintiff had
“fair notice” that the conduct would be grounds for discharge. 
Plaintiff’s proposed jury verdict questions asked first whether an implied
employment contract existed “concerning the terms of [plaintiff’s] employment?” 
If the answer to this question was yes, it asked whether “defendant had just
cause to terminate plaintiff[.]”  The questions contained no other
liability standard.

¶ 8.            
There were two conferences on the jury instructions.  Prior to the first,
the court had prepared a draft that included reference to a just cause standard
for termination.  This conference was primarily a discussion that went on
for about an hour.  To the extent there were formal objections, they came
from defense counsel.  Defense counsel specifically objected to use of a
just cause standard to determine whether the termination was lawful.  

¶ 9.            
The second conference was conducted during the morning before the
closing arguments and the charge to the jury.  The court prepared a new
draft that dropped any reference to just cause, instead referring more
generally to whether the employer had breached the implied contract. 
Plaintiff’s counsel specifically objected to the deletion of the just cause
standard, arguing that the cases from this Court hold that once the jury finds
a modification, they “then decide whether or not there was just cause.” 
Plaintiff’s counsel summarized: “So we object on the basis of the court’s
continuing interpretation” of the Vermont Supreme Court cases.  The court
made no change in the instruction in response to this objection.

¶ 10.        
Following the jury charge, the court asked whether there were any
objections.  Plaintiff’s counsel answered “I just reiterate the previous
objections that I expressed.”  The court further inquired, “About the just
cause?” and plaintiff’s counsel answered, “Yes.”  The bench conference
then went on to defendant’s objections.

¶ 11.        
The court gave a special verdict form to the jury.  The first question
on the form was: 

 
Has plaintiff . . . proven by a preponderance of the evidence that
her at-will employment status was modified by defendant VNA’s employment
handbook or by its policies and practices?  

 

The second question was:

 
Has plaintiff . . . proven by a preponderance of the evidence that
defendant VNA obligated itself to follow certain disciplinary procedures, and
that the VNA failed to follow those procedures in this case? 

 

The jury answered “yes” to the
first question and “no” to the second, so they did not proceed on to the third
question, which asked them to compute back pay if they found that the
employment contract had been breached.  Pursuant to the jury finding,
judgment was entered for defendant.  

¶ 12.        
On appeal, plaintiff makes one central argument: that the jury
instructions were erroneous and prejudicial because they included no
instruction on “just cause.”  The crux of her argument is that “[o]nce the
employer modifies the ‘at-will’ employment relationship it is bound to
terminate only for cause.”  Consequently, because plaintiff believes that
there is no difference between “just cause” and “cause,” and because this Court
has previously defined “just cause,” plaintiff argues that the instructions
were erroneous and “prevented the jury from evaluating the dismissal according
to a commonly recognized standard.”  Furthermore, she asserts that the
exclusion of a “just cause” instruction from the jury instructions was
prejudicial because it did not allow the jury to evaluate either (1) whether
plaintiff engaged in the alleged conduct; or (2) whether the conduct was enough
to merit termination under the Court’s “just cause” standard as opposed to
misconduct that impacts “patient care and safety” under VNA’s standards.  

¶ 13.        
Before we examine the substance of plaintiff’s claims, we look at the
preservation of the issue.  V.R.C.P. 51(b) requires that to preserve an
objection to a jury instruction, a party must object “thereto before the jury
retires to consider its verdict, stating distinctly the matter objected to and
the grounds of the objection.”  Plaintiff’s brief post-instruction
objection—that plaintiff’s counsel repeated his earlier objections—does not
meet this standard.  As we held in Winey v. William E. Dailey, Inc.,
161 Vt. 129, 138, 636 A.2d 744, 750 (1993), “we do not believe that a blanket
reference made after the charge to arguments made before the charge, even if
allowed by the trial court, complies with Civil Rule 51(b).”  See also Weaver
v. Brush, 166 Vt. 98, 106, 689 A.2d 439, 445 (1996) (same).  Nor does
it state “distinctly” the matter objected to or “state the grounds of the
objection.”  See Winey, 161 Vt. at 138, 636 A.2d at 750; see also State
v. Vuley, 2013 VT 9, ¶ 38, ___ Vt. ___, 70 A.3d 940 (decided under
identical V.R.Cr.P. 30).  The court’s follow-up question—“About the just
cause?”—added a little more specificity when answered affirmatively but did not
at all specify the grounds for the objection.

¶ 14.        
Even if the post-instruction objection could be judged sufficient to
comply with Rule 51(b), it refers back to a charge-conference objection that
was only marginally more complete.[3] 
The charge-conference objection stated that the precedents require that once
the jury finds a modification, the jury must go on to decide “whether or not
there was just cause.”  With this very limited preservation, we are left
only with the question of whether just cause, however defined, is required in
every case where an employee is not an employee at will.[4]  

¶ 15.        
Even if plaintiff had preserved an objection, we would affirm on the
narrow issue presented.  We will address this issue because we recognize
from the arguments and the analysis of the trial judge that our decisions have
created understandable confusion. 

¶ 16.        
The issue involves a fundamental disagreement about the nature of an
implied contract of employment.  Both parties acknowledge that an employee
hired for an indefinite period of time is presumed to be an at-will employee, Dulude
v. Fletcher Allen Health Care, Inc., 174 Vt. 74, 80, 807 A.2d 390, 395
(2002), and that this presumption can be overcome by evidence that the employer
unilaterally modified the at-will status by adopting policies and
practices—through an employee handbook or other means—that are inconsistent
with at-will employment, Taylor v. National Life Insurance Co., 161 Vt.
457, 464, 652 A.2d 466, 471 (1993).  However, the parties disagree as to
the terms of that implied contract.

¶ 17.        
Plaintiff’s theory is that once the at-will status of an employee has
been modified by an implied contract, a switch is flipped as to the proper
grounds of termination for that employee, and termination is henceforth subject
to a “just cause” requirement.  In her brief, plaintiff describes just
cause as “a public policy standard” and a “commonly recognized standard.”
 To the extent that plaintiff advanced a standard for determining just
cause,[5]
it is stated in plaintiff’s requests to charge and is a standard adopted by
this Court for determining the validity of public employee firing in In re
Brooks, 135 Vt. 563, 568, 382 A.2d 204, 207-08 (1977).  The Brooks
standard does not include any terms of the particular (implied) contract. 


¶ 18.        
Defendant, on the other hand, argues that situations under which someone
can be terminated are defined by the implied contract rather than by an
external “just cause” standard.  Therefore, defendant asserts, there was
no need for any instruction on cause in this case because the analysis of cause
as defined under the contract was subsumed into the jury instruction about the
breach of the employment contract.  

¶ 19.        
Although there are many confusing elements to the doctrine of implied
employment contracts (and we can guarantee that this will not be the last case
centered on the terms of such a contract), one thing is clear: defendant is
correct that simply modifying an employee’s at-will status does not, on its
own, automatically import our previously defined “just cause” standard into the
contract.  

¶ 20.        
The only general “just cause” standard or definition in our case law
traces back to Brooks. That case was not about an implied employment
contract, but instead involved the interpretation of the phrase “just cause” as
it appeared in a collective bargaining agreement for state employees.  Id.
at 566, 382 A.2d at 206.  Relying upon three public employee dismissal
cases from other jurisdictions, we first defined just cause as “some
substantial shortcoming detrimental to the employer’s interests, which the law
and a sound public opinion recognize as a good cause for his dismissal,” and
then went on to state that “[t]he ultimate criterion of just cause is whether
the employer acted reasonably in discharging the employee because of
misconduct.”  Id. at 568, 382 A.2d at 207 (citations
omitted).  Finally, we held that a discharge under this standard could be
upheld “only if it meets two criteria of reasonableness: one that it is
reasonable to discharge employees because of certain conduct, and the other,
that the employee had fair notice, express or fairly implied, that such conduct
would be ground for discharge.”  Id. at 568, 382 A.2d at 208.

¶ 21.        
In the years since the Brooks decision, we have applied this test
many times to cases involving the termination of state employees.  See,
e.g., In re Jewett, 2009 VT 67, 186 Vt. 160, 978 A.2d 470 (involving
termination of correctional officer subject to collective bargaining
agreement); In re Hurlburt, 2003 VT 2, 175 Vt. 40, 820 A.2d 186
(involving termination of supervisory employee of Department of Buildings and
General Services); In re Towle, 164 Vt. 145, 665 A.2d 55 (1995)
(involving termination of employee of Department of Corrections).  

¶ 22.        
Confusingly, we have also applied this test a number of times to cases
involving implied employment contracts.  In the cases where we did this,
however, we never held that any implied employment contract necessarily
included a term for “just cause” as defined in Brooks.  Instead, we
assumed for purposes of argument that such a term was part of the contract and
demonstrated that the terminations in those cases did meet the standard of
“just cause.”  See Dulude, 174 Vt. at 80, 807 A.2d 395-96 (“Even if
we assume . . . that a just cause term of employment was
implied from the [employer] handbook or employment policy, we
conclude . . . that [the reasons for termination] amounted to
just cause . . . .”); Nadeau v. Imtec, Inc., 164 Vt.
471, 475, 670 A.2d 841, 844 (1995) (“Because we hold that defendants had just
cause as a matter of law for plaintiff’s discharge, we do not resolve the
conflict about the applicable standard.”).  In her brief, plaintiff argues
that we should use the definition for just cause from Dulude, which is
the same as the reasonableness requirement in Brooks.  Dulude,
174 Vt. at 80, 807 A.2d 395-96 (citing Brooks, 135 Vt. at 568, 382 A.2d
at 207).

¶ 23.        
We decline to do so.  Under plaintiff’s view of the doctrine of
implied employment contracts, we could easily find ourselves in a situation
where we would have to: (1) begin with a presumption of at-will employment; (2)
find that presumption to be defeated by policies inconsistent with at-will
employment, such as a particular set of standards governing when termination is
permissible; and therefore (3) subject the employer to an entirely different,
external standard—namely, the Brooks “just cause” standard.  It is
clear from Taylor, 161 Vt. at 464, 652 A.2d at 471, our first
comprehensive decision on wrongful termination in private employment, that we
adopted a contractual rationale for holding that employers—by their employment
polices and actions—could assume obligations inconsistent with an
employment-at-will relationship with their employees.  Although we used
the words “good cause” or “cause” in that decision, see id. at 464-465,
652 A.2d at 471, the point was to distinguish the employer’s right to terminate
for no cause in an employment-at-will relationship.  What obligations
employers assume have to be based on their policies and actions.  As we
said in Ross v. Times Mirror, Inc., 164 Vt. 13, 20, 665 A.2d 580, 584
(1995), “definitive policies, which expressly or impliedly include a promise
for specific treatment in specific situations, especially when the employer
expects the employee to abide by the same, may be enforceable in
contract.”  It would be inconsistent with the contractual theory of
liability, as well as simply illogical, to adopt plaintiff’s view.  It
would also be unfair to the employer, who would effectively be unable to set up
any standards for termination other than the “just cause” standard.  

¶ 24.        
The Supreme Court of Utah faced a similar argument in Sanderson v.
First Security Leasing Co., 844 P.2d 303 (Utah 1992).  In that case,
the plaintiff claimed that a specific promise had been made to him that he
would not be terminated from his job because of illness, and therefore argued
that his at-will employment status had been modified and he could be terminated
only for cause.  The court rejected that logic, stating:

Even
if his statements are interpreted in the light most favorable to [the
plaintiff], [the employer] did not promise that he would fire [the plaintiff]
only for cause or only for good cause.  He promised merely that he would
not fire [the plaintiff] for being unable to work because of his current
illness.  He retained his at-will prerogative to fire [the plaintiff] for
any other reason.

 

Id.
at 307.  The general principle, the Utah court held, is that “[a]t-will
employment is a bundle of different privileges, any or all of which an employer
can surrender through an oral agreement.”  Id.  We agree, and
have adopted similar reasoning in the past.  See Madden v. Omega
Optical, Inc., 165 Vt. 306, 310-11, 683 A.2d 386, 389-90 (1996) (“[E]ven if
the handbook modified plaintiffs’ at-will status with respect to unsatisfactory
performance by creating a disciplinary procedure, an issue we do not decide,
plaintiffs could still be fired for reasons other than poor
performance.”).  Following this logic, if an employer chooses to give its
employees a measure of job security—in return for the higher morale of a secure
workforce—by setting up standards governing grounds for termination, we will
not interfere with that choice by imposing an arbitrary, separate standard for
termination.  We hold, therefore, that plaintiff was not entitled to an
instruction on just cause as she requested.

¶ 25.        
In reaching this conclusion, we acknowledge that we have created
confusion with our sloppy word choice in past decisions, jumping between
“cause,” “good cause,” and “just cause,” to the chagrin of litigants and judges
alike.[6] 
See Benoir v. Ethan Allen, Inc., 147 Vt. 268, 271, 514 A.2d 716, 718
(1986) (“[T]he . . . contract provision cannot be construed as being
consistent with an at-will employment relationship.  In short, the
handbook, by clear implication, foreclosed defendant’s right to terminate without
cause.” (emphasis added)); Dulude, 174 Vt. at 80, 807 A.2d at 395
(“[Plaintiff] can overcome this [at-will] presumption by presenting evidence
that [her employer] unilaterally modified her at-will status with an express or
implied contract of employment that provided for termination only for cause. 
Even if we assume, however, that a just cause term of employment was
implied . . . .” (emphases added)); Dillon v. Champion
Jogbra, Inc., 175 Vt. 1, 5, 819 A.2d 703, 707 (2002) (“An
employer . . . may implicitly bind itself to terminating
only for cause” (emphasis added)); Taylor, 161 Vt. at 464, 652
A.2d at 471 (“We join the many courts that have held that personnel manual
provisions inconsistent with an at-will relationship may be used as evidence
that the contract of employment requires good cause for
termination . . . .” (emphasis added)).  

¶ 26.        
The most that can be said about our use of these terms is that there is no
meaningful difference between “good cause,” “just cause,” and merely
“cause.”  Cf. Bishop v. Avis Budget Group, Inc., No. C 13-00566
SBA, 2013 WL 2081614, at *3 n.2 (N.D. Cal. May 14, 2013) (“The terms ‘just
cause’ and ‘good cause’ are generally considered to be
interchangeable.”).  We take this opportunity to clarify that the three
terms are synonymous, with one exception: the Brooks “just cause”
standard has been assigned a particular legal significance in the
state-employee-collective-bargaining context, as discussed above.  “Just
cause” in any other context is no different from “cause” or “good cause,” and
we emphasize that all three terms could be better described in the
implied-employment-contract context as cause as defined in the contract.

¶ 27.        
Finally, we stress that we are addressing a narrow issue. 
Plaintiff failed to object to any of the language of the charge delivered by
the trial court, instead arguing that the charge should have contained
additional language.  Thus, we do not reach any claims that the substance
of the charge contained reversible error.  

Affirmed.


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  

 

¶ 28.        
ROBINSON, J., concurring in part, dissenting in part.  
I concur with the majority’s thoughtful opinion concerning the merits of this
case.  I write separately to express my concern that the majority’s
discussion of the preservation issue in this case is unmoored from the purposes
of the rules of civil procedure and the practical realities of trials, and
undermines the fairness and judicial efficiency those rules seek to
promote.   

¶ 29.        
The majority’s opinion here—that plaintiff’s objection to the court’s
failure to instruct as to “just cause” was insufficient to preserve her claim
despite the lengthy back and forth between the parties and the court at the
charge conference shortly before the instructions, and despite her articulation
of her objections at that time—follows a recent and worrisome trend.  In State
v. Vuley, this Court held that a party’s post-charge objection to the trial
court’s instruction on the so-called “doctrine of chances” was insufficient to
preserve a defendant’s objection to the instruction because defense counsel
failed to reiterate the various bases for the objection post-charge—even though
shortly before, at the charge conference, the court and counsel had engaged in
a lengthy exchange during which defendant explicated the bases for the
objection multiple times.  2013 VT 9, ¶¶ 36-39, ___ Vt. ___, 70 A.3d
940.  I will not reiterate my lengthy review of our prior cases concerning
the preservation requirements of V.R.C.P. 51(b) and V.R.Cr.P. 30.  See id.
¶¶ 55-63 (Robinson, J., dissenting).  Suffice it to say that I
believe that the Court’s opinion in Vuley went much further than any
prior case in precluding review of an objection to a jury instruction on the
basis of non-preservation.  Although the majority’s analysis in this case
relies upon V.R.C.P. 51(b), as opposed to V.R.Cr.P. 30, the underlying issue is
the same:  How detailed must a post-charge objection to an instruction be
in order to preserve that objection?  The majority’s analysis here suffers
from the same flaws as in Vuley.    

¶ 30.        
The majority essentially holds that if a party does not reiterate the
specific basis or bases for the objection post-charge, the objection, or the
basis or bases of the argument, are not preserved—without regard to what has
come before.  The allure of this approach is that it follows a relatively
bright line.  It also makes our job as appellate reviewers easier insofar
as we need only look to one place in a transcript to learn all we need to know
about the preserved objections to jury instructions.  But the downsides to
this construction of V.R.C.P. 51(b) are that it does not conform to prevailing
practices, potentially gums up the works at an already hectic stage of a trial,
and unjustly precludes appellate review of arguments that were clearly
articulated below, and understood and carefully rejected by the trial
judge.  

¶ 31.        
This last point is critical, as we have recognized that the purpose of
the post-charge objection requirement is to give the trial court “one last
opportunity to avoid an error.”  Id. ¶ 59; see also State
v. Wheelock, 158 Vt. 302, 306, 609 A.2d 972, 975 (1992).  In this
case, the trial court well understood the substance of plaintiff’s objection,
and its statements reflect thoughtful consideration and rejection of
plaintiff’s argument.  When the trial court, after initially proposing to
instruct on “just cause,” indicated its intention to eliminate such an
instruction, plaintiff promptly objected.  Plaintiff argued that the
proposed instruction ran afoul of a whole line of cases that, in plaintiff’s
view, support the notion that once a jury concludes that an employer has
modified an at-will arrangement, the employer can only terminate for “just
cause.”  Plaintiff cited several cases in the context of that
discussion.  The trial court explained why it rejected plaintiff’s view,
and the parties and the trial court engaged in an extended exchange of views on
the subject, accounting for several trial transcript pages.  The trial
court maintained its position and ultimately delivered the instruction essentially
as proposed and discussed in the charge conference.  Less than an hour and
a half after the charge conference, plaintiff reiterated her previous
objections concerning “just cause.”  In this context, the post-charge
objection was sufficient to put the court on notice that plaintiff still
objected to the failure to include a “just cause” instruction, and of the basis
for the plaintiff’s objection.  The court had ample opportunity to change
course.  Plaintiff complied with the preservation requirement of V.R.C.P.
51(b) with respect to the central argument urged on appeal.

¶ 32.        
I note that this is not a case in which a party made only a generalized
or cryptic post-charge objection that failed to make her position clear to the
court.  See, e.g., State v. Massey, 169 Vt. 180, 188-89, 730 A.2d
623, 629 (1999).  Nor is this a case in which plaintiff’s arguments on
appeal deviate substantially from the arguments set forth below.  See,
e.g., State v. Covino, 163 Vt. 378, 381, 658 A.2d 916, 918 (1994). 
If there was not preservation here, then I fear that careful litigants
throughout the state, who believe they are being respectful of the court’s and
jury’s time by refraining from rehashing extended statements of their
objections and supporting arguments at a post-charge side bar—when the trial
court has clearly heard, absorbed, and rejected those points already, the
record reflects the arguments underlying the objections,  and the jury is
ready to begin deliberating—will find themselves denied appellate review of
their objections on the basis of an overly zealous application of V.R.C.P.
51(b) that does not promote the rule’s underlying purposes.

¶ 33.        
For these reasons, I respectfully dissent from ¶¶ 13-14 of the
majority’s opinion.  

 


  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate Justice
 
  

 











[1]
 Plaintiff’s breach-of-implied-contract claim was based entirely on VNA’s
alleged failure to use progressive discipline.  Plaintiff never claimed
that she was terminated without just cause.

 





[2]
 In the summary judgment decision, the trial court addressed the grounds
for plaintiff’s termination, noting that the record evidence suggested that
defendant “drew some sort of line between the types of unprofessional conduct
that warranted immediate termination and the types that did not” and concluded
“[i]t will be the jury’s role to determine exactly where this line was drawn,
whether the employees had reason to rely upon the line, and, as discussed
below, whether plaintiff’s conduct fell outside the line or not.”  It went
on to say that “the final question is whether plaintiff’s conduct was sufficiently
serious to warrant termination” and that there were “disputed facts as to
whether this particular incident was serious enough [to] warrant immediate
termination.”  It noted an “apparent concession that the issues can be
resolved on the basis of the employer’s findings and the depth of its
investigation rather than by further inquiry into the complainant’s experiences
on the day her husband died.” 





[3] 
We judge the charge-conference objection only marginally more complete because
it says nothing about the definition or content of just cause.  As we
noted above, plaintiff filed proposed jury instructions that defined the
elements of just cause but never referred to the filing in any of the
discussions in the charge conferences and even used a definition contrary to
that in the proposed instruction.  In the charge conference, plaintiff’s
counsel argued that “the employer in this case defined just cause by saying
unprofessional conduct and endangering patient care.  That is just
cause.”  In the proposed charge, plaintiff defined just cause in
accordance with the elements set forth in In re Brooks, 135 Vt. 563, 382
A.2d 204 (1977).  See infra ¶ 17.  As noted infra,
n.5, this inconsistency in plaintiff’s arguments has continued in her briefing.

 





[4]
 Plaintiff’s brief to this Court covers more than this narrow question,
but there is clearly no preservation of other issues.  For example,
plaintiff asserts that she wanted the jury to decide “whether appellant engaged
in the misconduct alleged, and if she did, whether the alleged misconduct
amounts to just cause.”  She alleges that these issues were raised in the
pleadings and were omitted from the special interrogatory.  In fact, there
is no mention of these questions in plaintiff’s complaint, and the special
interrogatories she proposed did not include them.  We can find no
instance where plaintiff sought that these questions be in the charge or the
special interrogatories.  This is so even in the first charge conference,
where plaintiff had no objection to the court’s original charge—which did not
address these questions.

 





[5]
 As noted supra n.3, plaintiff’s counsel did suggest that just
cause might be defined in terms of the self-imposed standards that defendant’s
management employees actually employed in individual cases.  Thus, in the
brief plaintiff describes the standard as “good and sufficient cause impacting
patient care or safety,” “severe misconduct,” and “[u]nprofessional conduct,”
while at the same time proffering a “public policy standard” unrelated to the
facts of a specific case.  We have discussed particularly the public
policy standard in the text because that is the one contained in plaintiff’s
proposed verdict form and proffered first in the charge conference. In fact, it
is impossible to determine what standard plaintiff proposes.

 





[6] 
We recognize this legitimate confusion in the words of the trial court in this
case, which remarked during the charge conference: “So it’s interesting why in
June [Dulude] they talk about just cause, and in December [Dillon]
they just talk about cause.  ‘They,’ being the Supreme Court.”