Filed 08/29/24

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-00592

Robert Caldwell v. Champlain College Incorporated

## DECISION ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Robert Caldwell has sued Champlain College, Inc., asserting multiple counts. He has since abandoned all claims except those alleging termination in violation of Vermont's Fair Employment Practices Act ("FEPA") and promissory estoppel. Champlain now moves for summary judgment on the remaining claims. The court grants the motion.

## BACKGROUND

Under Rule 56, the initial burden falls on the moving party to show an absence of dispute of material fact. *E.g.*, *Couture v. Trainer*, 2017 VT 73, ¶ 9, 205 Vt. 319 (citing V.R.C.P. 56(a)). When the moving party has made that showing, the burden shifts to the non-moving party; that party may not rest on mere allegations, but must come forward with evidence that raises a dispute as to the facts in issue. *E.g.*, *Clayton v. Unsworth*, 2010 VT 84, ¶ 16, 188 Vt. 432 (citing *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 266 (1981) and *Alpstetten Ass'n, Inc. v. Kelly*, 137 Vt. 508, 514 (1979)). Where that party bears the burden of proof on an issue, if fairly challenged by the motion papers, it must come forward with evidence sufficient to meet its burden of proof on that issue. *E.g.*, *Burgess v. Lamoille Housing P'Ship*, 2016 VT 31, ¶ 17, 201 Vt. 450 (citing *Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989)). The evidence, on either side, must be admissible. *See* V.R.C.P. 56(c)(1), (2) & (6); *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112 ("Once a claim is challenged by a properly supported motion for summary judgment, the nonmoving party . . . must come forward with admissible evidence to raise a dispute regarding the facts."). The court must give the non-moving party the benefit of all reasonable doubts and inferences. *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 476 (1998). Thus, "[i]n determining the existence of genuine issues of material fact, courts must accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Gates v. Mack Molding Co., Inc.*, 2022 VT 24, ¶ 13, 216 Vt. 379 (internal quotation marks omitted) (citing *Robertson v. Mylan Lab'ys, Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356).

Ordinarily, the standards above are so familiar as not to bear repeating. Here, however, Mr. Caldwell's failure to attend to his burden suggests the wisdom of restating the obvious. Faced with a motion and statement of undisputed material facts that fairly challenged him to come forth with admissible evidence to meet his burden of proof, Mr. Caldwell fell far short. This failure was both procedural and substantive.

Procedurally, Mr. Caldwell ignored the requirements of Rule 56(c)(2):

> A nonmoving party responding to a statement of undisputed material facts and asserting that a fact is genuinely disputed, that the materials cited do not establish the absence of a genuine dispute, or that the moving party cannot produce admissible evidence to support the fact, must file a paragraph-by-paragraph response, with specific citations to particular parts of materials in the record that the responding party asserts demonstrate a dispute, including depositions, documents, electronically stored information, affidavits, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other admissible materials. The responding party must reproduce each numbered paragraph of the moving party's statement before including the response thereto.

Mr. Caldwell neither reproduced each numbered paragraph of Champlain's statement before his responses nor provided specific citations to particular parts of materials in the record that he asserted demonstrate a genuine dispute.[1] The court declines to do Mr. Caldwell's homework for him. *Cf. U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Instead, the court considers all facts asserted in Champlain's Statement of Undisputed Material Facts to be undisputed for purposes of the motion. *See* V.R.C.P. 56(e)(2).

With this preface in mind, the following narrative emerges. On January 1, 2017, Champlain hired Mr. Campbell as its Vice President of Advancement. In the hiring process, Mr. Caldwell asked Don Laackman, Champlain's then-President, for a contract with a specified term; Mr. Laackman responded that he could not provide that because it was not "institutional policy." While Mr. Caldwell attests in the affidavit prepared in response to this motion that "[d]uring the discussions between President Laackman and me, it became clear President Laackman expected the relationship between

---

[1] In several instances—paragraphs 73–84 of his response to Champlain's Statement of Undisputed Material Facts—Mr. Caldwell both disputed, with no citation to the record, and objected on the basis of hearsay. The objection, however, overlooked the fact that the various statements were offered not for their truth, but instead as informing the listener's state of mind. *Cf. Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 26, 175 Vt. 413 (assertions about resignations and office problems not offered to prove the truth of the matters asserted, but instead "for the limited purpose of showing why [defendant] decided to relieve plaintiff of her branch manager responsibilities"); *State v. Beattie*, 157 Vt. 162, 167 (1991) ("out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken") (quoting *United States v. Love,* 767 F.2d 1052, 1063 (4th Cir.1985)); *see also* C. McCormick, McCormick on Evidence § 249, at 733–34 (E. Cleary 3d ed. 1984) ("When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, ... the evidence is not subject to attack as hearsay.") (cited with approval in *State v. Beattie*, 157 Vt. at 167).

and [sic] Champlain and me would last a decade," he provides proof of not a single statement that informed this belief—much less anything approaching a promise. Instead, Mr. Caldwell signed an Offer Letter specifying that his employment would be at-will:

> Your employment is subject to employment at will and may be terminated by either party at any time. This letter of employment is not a contract and all information presented is subject to change at any time.

Mr. Caldwell was under no illusions in this regard. At deposition, he stated that he "recognize[d he] signed an at will contract" and when asked if he knew what the at-will language meant, Mr. Caldwell stated, "Sure. Very familiar with it." He further stated that he understood the "at will" language in the Champlain At-Will Employment Offer to mean "that an institution and an individual can terminate the employment at any time without reason unless it's illegal."

Champlain's fiscal year ran from July 1 through June 30 of the following year. In both of his positions (first as Vice President of Advancement and, later, as Chief Advancement Officer), Mr. Caldwell was Champlain's chief fundraiser. Mr. Caldwell did not provide input for setting the fundraising goal for FY 2017, but he did for FYs 2018 and 2019. Champlain's budget success depended, in part, on Mr. Caldwell's meeting these goals. In each of the two full fiscal years of Mr. Caldwell's employment, he failed to meet these goals. For FY 2017, approximately three-fourths of the total raised was raised in the six months before Mr. Caldwell's employment with Champlain started. Nor was Mr. Caldwell's underperformance trifling: even on his own numbers—substantially more favorable than Champlain's—he underperformed in FY 2018 by over 10%, and in FY 2019 by just under 45%.

Mr. Caldwell's underperformance was the subject of multiple conversations, in performance evaluations and otherwise. Mr. Caldwell's first evaluation, four months into his employment, was generally positive. In subsequent conversations, however, his failure to meet goals was a consistent theme. His May 2018 evaluation noted, "We are not hitting goals for capital fundraising." A year later, in June 2019, Mr. Laackman met with Laurie Quinn, the then-Provost who was about to take over as Champlain's Interim President. During that meeting, Mr. Laackman told Dr. Quinn that Mr. Caldwell did not have the support of Board leadership based on his fundraising performance and that Board leadership expected management to take action to address his continued employment with Champlain. Mr. Laackman told Dr. Quinn that he would terminate Mr. Caldwell's employment before the end of his presidency due to the deficiency in Mr. Caldwell's fundraising performance if she wanted him to do so. Dr. Quinn declined this offer because she wanted to conduct her own due diligence.

In the same timeframe, Mr. Caldwell met with Terry Breen, chair of the Champlain Board's Advancement Committee, to discuss Mr. Caldwell's failure to come close to his FY 2019 fundraising goal and ways to improve his fundraising performance. After the meeting, Mr. Breen prepared a summary of the meeting and sent it to Dr. Quinn and other Board members. In the summary, Breen wrote: "I think Robert is both scared about his 2018/19 performance and motivated to turn things around."

Alone among Champlain's senior leadership team, Mr. Caldwell did not receive either a bonus or a raise at the end of FY 2019. In May 2019, Mr. Caldwell discussed with Mr. Laackman "how to move forward" after the trustees decided not to accept Mr. Laackman's recommendation with regard to a bonus. He later testified that when Mr. Laackman informed him of this decision, he thought "wow that's a strong message. Okay." He also acknowledged in a July 2019 email to the head of human resources that "it's just a BIG message that directly hits your family when you're told No bonus and No salary increase because you did not meet target. It's the kind of message that causes you to get keenly focused."

On July 18, 2019, Dr. Quinn, then the Interim President of Champlain, met with Mr. Caldwell to discuss his performance. During this meeting, Dr. Quinn addressed the fact that Mr. Caldwell had missed his fundraising goal for FY 2019 "by a lot." She further made clear that the Compensation Committee's decision not to provide him with a bonus or raise was a "serious signal."

In May of that year, Mr. Caldwell had been diagnosed with chronic kidney disease ("CKD"). At the time, he informed Mr. Laackman of the diagnosis but did not ask for any accommodation. In the July 18 meeting with Dr. Quinn, Mr. Caldwell told her that he was "going through some health stuff" or "deal[ing] with health issues." He did not mention chronic kidney disease; nor did he request an accommodation.[2] This was the only time he referenced his health to Dr. Quinn.

---

[2] In the affidavit he submitted in opposition to this motion, Mr. Caldwell stated that "I shared with Interim President Quinn that I recently received a diagnosis of a serious kidney disease that required further medical testing and might require some workplace accommodations so that I could further investigate my medical diagnosis and continue to work." This statement contradicts both Mr. Caldwell's deposition testimony and his response to Champlain's Statement of Undisputed Material Facts. Thus, the court treats this statement as a "sham affidavit," and disregards it. *See Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 30 (1st Cir. 2019); *Johnson v. Harwood*, 2008 VT 4, ¶ 5, 183 Vt. 157 (citing *Travelers Ins. Cos. v. Demarle, Inc., USA*, 2005 VT 53, ¶ 9, 178 Vt. 570 (mem.)).

In a similar vein, Mr. Caldwell attested that "During the meetings, Interim President Quinn did not express any concerns or criticism of my job performance, nor suggest that my continued employment was at risk." This statement is at odds with Mr. Caldwell's failure to dispute the following assertion in Champlain's statement of undisputed material facts: "At this meeting Dr. Quinn reiterated to Mr. Caldwell the fact that he had missed his fundraising goal for Fiscal Year 2019 'by a lot' and that the Compensation Committee's decision to not provide him with a bonus or a raise was a 'serious signal.'" Thus, to the extent it is material, the court likewise disregards Mr. Caldwell's affidavit in this regard.

In August 2019, having completed her due diligence, Dr. Quinn made the decision to terminate Mr. Caldwell's employment.[3] In late August, she informed the Board of her decision. On September 3, 2019, Dr. Quinn met with Mr. Caldwell to advise him that his employment was terminated.

## Analysis

### The Fair Employment Practices Act

FEPA makes it illegal for an employer to discriminate against any individual based on disability. 21 V.S.A. § 495(a)(1); *Hammond v. Univ. of Vt. Med. Ctr.*, 2023 VT 31, ¶ 24. FEPA is based on Title VII of the Civil Rights Act of 1964, and " 'the standards and burdens of proof under FEPA are identical to those under Title VII.'" *Id* (quoting *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 161 (1992)). When, as here, a plaintiff relies on circumstantial, rather than direct, evidence of discrimination, the court "appl[ies] the three-part framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* ¶ 25 (citing *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 18, 176 Vt. 356). To avoid summary judgment under that framework, the plaintiff "must first establish a prima facie case by demonstrating that they suffered an adverse employment action under 'circumstances which give rise to an inference of unlawful discrimination.' " *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)). This initial burden is "relatively light," serving the purpose of eliminating "patently meritless claims." *Robertson*, 2004 VT 15, ¶ 24 (citing *Burdine*, 450 U.S. at 254). If the plaintiff is able to establish a prima facie case, the burden shifts to the employer "to articulate 'a legitimate, nondiscriminatory reason for the challenged conduct.' " *Hammond*, 2023 VT 31, ¶ 25 (quoting *Gauthier v. Keurig Green Mountain, Inc.*, 2015 VT 108, ¶ 15, 200 Vt. 125). Importantly, "[t]he employer's burden at this second stage is solely one of production, not persuasion." *Robertson*, 2004 VT 15, ¶ 25. If the employer satisfies its burden, the plaintiff must then prove " 'that the proffered reason was a mere pretext for discrimination.' " *Hammond*, 2023 VT 31, ¶ 25 (quoting *Gauthier*, 2015 VT 108, ¶ 15 (further quotation and citation omitted)).

To satisfy his initial burden on his disability discrimination claim, Mr. Caldwell must produce evidence that (1) he had a disability, (2) Champlain was notified of his disability, (3) he was "otherwise qualified to perform the . . . job, with or without reasonable accommodations," and (4) he "suffered [an] adverse employment action because of [his] disability.' " *Id.* ¶ 35 (quoting *Sista v. CDC*

---

[3] Mr. Caldwell disputes this statement. He also disputes the earlier assertion that "As she began her interim presidency, Dr. Quinn wanted to make sure that she had all of the correct numbers to properly evaluate Mr. Caldwell's performance as a fundraiser." In disputing the earlier assertion, Mr. Caldwell himself asserts, "As set forth in Plaintiff's Opposition and supporting documents, Mr. Caldwell's termination was not based on performance but due to his disclosure of a serious health condition." Notably, however, he provides no evidentiary support for either of these supposed disputes.

*Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). Here, Champlain does not challenge Mr. Caldwell's claim of disability based on his diagnosis of CKD.[4] It is undisputed that Mr. Caldwell informed Mr. Laackman of his diagnosis in May 2019; this was notice to Champlain. Mr. Caldwell requested no accommodation at that time or thereafter. While this is not a reasonable accommodation case, this failure is nevertheless relevant as it undercuts any suggestion that Champlain's decision to terminate him, over three months later, was based on the disability.

Critically, there is no evidence that Dr. Quinn was aware of anything more than that Mr. Caldwell was dealing with "health issues," and there is nothing to suggest that she considered or treated this as any form of disability. *See* 21 V.S.A. § 495d(5)(C) (defining "Individual with a disability" as including one "who . . . is regarded as having [] an impairment [that substantially limits one or more major life activities]"). Thus, there is no evidence to support an inference that she, as the decisionmaker, based her decision on Mr. Caldwell's disability. Indeed, the only evidence that Champlain had knowledge of the claimed disability predates the termination by over three months. This is too long to support an inference of discrimination based on timing alone. *See Robertson*, 2004 VT 15, ¶ 47 (citing with approval *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir.1990), for the proposition that "proximity in time of three months between the protected activity and the adverse action is alone insufficient to make out a prima facie case"). But timing is all Mr. Caldwell has. He fails, therefore, to make out a prima facie case of discrimination.[5]

Even could Mr. Caldwell clear the prima facie hurdle, his case would fail at the third step of the *McDonnell Douglas* inquiry. The undisputed facts recited above make clear that Champlain has more than met its burden of production; it has proven conclusively that there were serious, performance-based reasons for Dr. Quinn's decision to terminate Mr. Caldwell's employment. In response, Mr. Caldwell attempts to minimize the extent of his underperformance. These attempts, however, fall far short of " 'demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, [nondiscriminatory] reasons for its action.' " *Gauthier*, 2015 VT 108, ¶ 22 (quoting *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

---

[4] The court notes that there appears to be no evidence of record that this diagnosis caused Mr. Caldwell to suffer a "physical or mental impairment which substantially limit[ed] one or more major life activities." 21 V.S.A. § 495d(5)(A). The parties not having addressed this issue in their papers, the court could properly have called for further briefing on this subject per Rule 56(f). Because the issues that the parties did treat in their papers are more than sufficient to dispose of this case, the court declines to put the parties to this extra work.

[5] Champlain asserts that Mr. Caldwell was not qualified to perform his job because he was not meeting expectations. While this is clearly a colorable argument, the court need not address it; the failure of proof of discriminatory intent alone is sufficient to defeat the prima facie case.

Mr. Caldwell is thus left with the assertion that another employee, the Director of Enrollment Planning, also underperformed, and was not fired. This is, essentially, a disparate treatment claim; to prove it, Mr. Caldwell must produce evidence that he was treated differently than other similarly situated employees. *See Hammond*, 2023 VT 31, ¶ 27. Here, however, the quantum of underperformance was so much greater in Mr. Caldwell's case as to rebut any claim of similarity.

These observations leave Mr. Caldwell's promissory estoppel claim. This claim, too, fails. To succeed on this claim, he must prove (1) that Champlain made him a promise that it "should have reasonably expected to induce action or forbearance;" (2) that Caldwell "relied on the promise to his detriment; and (3) that injustice can be avoided only by enforcement of the promise." *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 11, 214 Vt. 269; *accord Nelson v. Town of Johnsbury Selectboard*, 2015 VT 5, ¶ 56, 198 Vt. 277; Restatement (Second) of Contracts § 90(1) (1981). A promise, for purposes of promissory estoppel, "is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1) (1981). "The promise must be more than 'a mere expression of intention, hope, desire, or opinion, which shows no real commitment.' " *Nelson*, 2015 VT 5, ¶ 56 (quoting *Escribano v. Greater Hartford Acad. of Arts*, 449 Fed. Appx. 39, 43 (2d Cir. 2011)). And relatedly in this case, the claimed reliance must be reasonable. *See Dillon v. Champion Jogbra, Inc.*, 175 Vt. 1, 10 (2002); *Tour Costa Rica v. Country Walkers, Inc.*, 171 Vt. 116, 120–21 (2000).

The undisputed facts conclusively refute this claim. Mr. Caldwell's Offer Letter clearly stated that his employment was "subject to employment at will and may be terminated by either party at any time," and that the letter was "not a contract." At-will employees may be terminated "at any time for any reason." *Nelson*, 2015 VT 5, ¶ 13 (citing *Handverger v. City of Winooski*, 2011 VT 130, ¶ 2, 191 Vt. 556) (mem.)); *see also Foote v. Simmonds Precision Prods., Inc.*, 158 Vt. 566, 570 (1992) ("employment contract for an indefinite term is an 'at-will' agreement, terminable at any time, for any reason"). Promissory estoppel may modify an at-will employment relationship in some cases and provide the employee with a remedy for wrongful discharge. *Nelson*, 2015 VT 5, ¶ 56 (quoting *Foote*, 158 Vt. at 571); *Leblanc v. United Parcel Serv., Inc.*, No. 2:95-CV-68, 1996 WL 192011, at *4 (D. Vt. Apr. 2, 1996). The promise, however, must be " 'of a specific and definite nature,' *Woolaver v. State,* 2003 VT 71, ¶ 30, 175 Vt. 397 (quotation omitted), and not merely a 'vague assurance,' *Dillon v. Champion Jogbra, Inc.*, 175 Vt. 1, 10 (2002)." *Id.*

During his deposition, Mr. Caldwell was asked what Mr. Laackman said to him before he signed the Offer Letter that caused him to believe the employment was not at will. He responded:

> In various terms and also written that we would have a long career together. He used the term ten years. He used the terms this is going to be a marathon not a sprint. He understood what I was sharing with him that to get us up and running was going to take a long time[.]

Mr. Caldwell relies on the following statements from his Affidavit for further support:

> 8. During the discussions between President Laackman and me, it became clear that President Laackman expected the relationship between and Champlain and me would last a decade.

> 9. During the same discussions between President Laackman and me, it also was clear that Champlain was committed to provide the resources necessary to establish a successful advancement program that I was being hired to create.

> . . . .

> 11. In the letter from Defendant offering the position, Plaintiff was told: "You will play a critical role in the future of our college with your leadership in our advancement endeavors."

As noted above, however, he provides proof of not a single statement that informed his sense of clarity—much less anything approaching a promise. Indeed, Mr. Caldwell acknowledges that when he asked for a contract with a specified term, Mr. Laackman told him that he could not provide that because it was not "institutional policy." And he acknowledged that he knew exactly what he was signing up for when he signed an at-will contract.[6]

The *Dillon* and *Pettersen* cases cited above are instructive in this regard. In the former, the plaintiff was applying for a particular position and was told during the interview that it would take her "four to six months to feel comfortable with [the] position." 175 Vt. at 4. She was hired for that position but was then reassigned after just two months and ultimately terminated from the company. *Id.* In rejecting the employee's claim for promissory estoppel, the Court concluded that the four-to-six-month statement by the company was only a "vague assurance" and that it could not "reasonably be relied upon as a promise of employment . . . for a set period of time" because it was not "a promise of a specific and definite nature." *Id.* at 10; *see Willis v. New World Van Lines, Inc.*, 123 F.Supp.2d

---

[6] Mr. Caldwell also relies on statements Mr. Laackman made after Mr. Caldwell had joined Champlain. *A priori*, these are irrelevant in the promissory estoppel analysis. A statement cannot have induced reliance if it is made after the action it is supposed to have induced has occurred. *See McKenney v. John V. Carr & Son, Inc.*, 922 F. Supp. 967, 980 (D. Vt. 1996) ("The theory of detrimental reliance applies when the promise comes first and induces the subsequent action in reliance.") (citing 1A Corbin on Contracts § 196, at 201).

380, 395 (E.D. Mich. 2000) (" 'The sine qua non of promissory estoppel is a promise that is definite and clear.' ") (quoting *Marrero v. McDonnell Douglas Capital Corp.*, 505 N.W.2d 275, 278 (Mich. Ct. App. 1993)).

In *Petterson*, the plaintiff was an associate at a law firm who was "uncomfortable with his salary" and sought information about the "typical partnership track." 2021 VT 16, ¶ 3. During a discussion with a partner of the firm, the associate stated that he thought a "reasonable trajectory" would be to become a partner and earn $100,000 annually after five years. *Id*. The partner responded that this trajectory "was reasonable." *Id*. The associate asserted that he decided to stay with the firm based on this "promise" concerning compensation and partnership. *Id*. When he was terminated less than two years later, he argued that the partner's statement was an enforceable promise. *Id*. ¶ 12. The Supreme Court disagreed, quoting *Dillon*: " 'Courts have generally required a promise of a specific and definite nature before holding an employer bound by it,' " and " '[a] vague assurance is insufficient.' " *Id*. ¶ 13. The Court continued: "The promise must be more than a mere expression of intention, hope, desire, or opinion, which shows no real commitment." *Id*. (quoting *Nelson*, 2015 VT 5, ¶ 56 (quotation omitted)).

The words of *Dillon* and *Petterson* could have been written for this case. Here, as in those cases, the statements and representations Mr. Caldwell attributes to Mr. Laackman lack the specificity and definite nature required to support a claim of promissory estoppel. Mr. Caldwell points to nothing specific or definite that Mr. Laackman said to him before he signed the Offer Letter, and the letter was clear that employment was "at will and may be terminated by either party at any time." At most, there was a vague suggestion of a decade-long relationship. This was nothing more than an expression of intention, hope, or desire—certainly not enough to support a claim for promissory estoppel. *See Nelson*, 2015 VT 5, ¶ 56 (vague assurance is not enough to support claim for promissory estoppel).

In a last-ditch effort to save his claims, Mr. Caldwell argues that Mr. Laackman made statements post-hiring that modified the at-will relationship. These statements include:

- an email in which Mr. Laackman stated: "We will be working for the next ten years to build our legacies, and so patience at the beginning will deliver big benefits soon" and "She [Katherine Birrow] and I are both committed to you being successful and to us having a very long-term productive relationship."

- a written note near the end of Mr. Caldwell's first year in which Mr. Laackman stated: "I am so grateful that you moved your tribe to Champlain College. You have already made a strong impact and I enter 2018 encourage[d] by what we will achieve together."

Mr. Caldwell fails to explain, however, how these statements could have modified the parties' at-will relationship so that it became a contract for a particular term. Failing such an explanation, the court is at a loss; the connection is far from obvious. While an employer can unilaterally modify an at-will relationship by the adoption of policies or practices inconsistent with at-will employment, *see, e.g., Straw v. Visiting Nurse Ass'n and Hospice of VT/NH*, 2013 VT 102, ¶ 16, 195 Vt. 152; *Taylor v. Nat'l Life Ins. Co.*, 161 Vt. 457, 464–65 (1993); *Foote*, 158 Vt. at 571, Mr. Caldwell cites no cases that remotely suggest that statements such as those above can have such an effect. In short, Mr. Caldwell's employment with Champlain was unequivocally at will from the start and remained so until the day he was terminated.

## ORDER

The court grants the Motion for Summary Judgment. The clerk will enter judgment for Champlain on all claims. The separate form of judgment required by V.R.C.P. 58 will issue forthwith.

Electronically signed pursuant to V.R.E.F. 9(d): 8/29/2024 3:21 PM

_____
Samuel Hoar, Jr.
Superior Court Judge